I.A.M. NATIONAL PENSION FUND
BENEFIT PLAN A, et al.,
Plaintiffs,

v.

CENTRAL STATES SOUTHEAST AND
SOUTHWEST AREAS HEALTH AND
WELFARE AND PENSION FUNDS, et
al., Defendants.

Civ. A. No. 85–1558.

United States District Court,
District of Columbia.

July 31, 1986.

Robert T. Osgood, Joseph P. Martocci, Jr., Washington, D.C., for plaintiffs.

William J. Nellis, Associate Gen. Counsel, Chicago, Ill., Rodney F. Page, Alan R. Malasky, Washington, D.C., for Central States, et al.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This is an action for a declaration that certain liabilities were properly transferred from the plaintiff employee benefit plan to the defendant employee benefit plan in accordance with the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1001 *et seq.* Before the Court are cross-motions for summary judgment by the plaintiffs, I.A.M. National Pension Benefit Plan A and its Board of Trustees (the IAM Plan), and the defendants Central States Southeast and Southwest Areas Health and Welfare and Pension Funds, its Trustees and nine individual former employees of Lee Way Motor Freight, Inc. (Central States). Upon consideration of the pleadings and the entire record herein, the Court finds that there is no material factual issue in dispute. Upon consideration of the pleadings and the entire record, the Court grants plaintiffs' motion for summa-

ry judgment and denies defendants' motion for summary judgment.

## Background

The IAM Plan is a multiemployer pension plan within the meaning of 29 U.S.C. § 1002(37) that was established to provide retirement benefits to eligible employees represented by District and Local Lodges affiliated with the International Association of Machinists and Aerospace Workers. Central States is also a multiemployer pension plan which provides retirement benefits to employees represented by affiliates of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Teamsters). Employees at Lee Way Motor Freight, Inc. (Lee Way), were originally represented by IAM Local Lodge 850, until members of the Oklahoma City facility of Lee Way elected to change their collective bargaining representative to a Teamsters' affiliate. Effective April 1, 1982, Lee Way ceased making contributions to the IAM Plan and began contributing to Central States on behalf of its Oklahoma City employees.

By a letter dated April 30, 1982, Lee Way notified the IAM Plan that, effective April 1, 1982, there had been a certified change of the collective bargaining representative for Lee Way's Oklahoma facility and that, as a result, Lee Way henceforth would be making contributions on behalf of its Oklahoma City employees to Central States. Consistent therewith, effective April 1, 1982, Lee Way ceased making contributions to the IAM Plan and began contributing to Central States on behalf of its Oklahoma City employees.

IAM and its trustees determined that the withdrawal by Lee Way employees was a partial withdrawal since the Lee Way facilities in both El Paso, Texas, and Los Angeles, California, continued to participate in IAM Plan A. By following the mandate of ERISA § 4206(a), 29 U.S.C. § 1386(a), IAM discovered that it could not calculate partial withdrawal liability until early 1984, as a partial withdrawal liability determination cannot be made until one full plan year has elapsed after the partial withdrawal occurs.

On June 7, 1984, the IAM Plan notified Central States of the benefits, assets and liabilities to be transferred to it pursuant to 29 U.S.C. § 1415. Central States replied on June 25, 1984, by a letter requesting information that it considered relevant to the transfer. The IAM Plan responded on August 2, 1984, by acknowledging the request, and providing the information to the extent possible.

It was not until June 7, 1985, that Central States filed an appeal with the Pension Benefit Guaranty Corporation (PBGC) concerning the proposed transfer. Since 29 U.S.C. § 1415(b)(3) provides the transferee plan 60 days in which to appeal a transfer, the PBGC dismissed Central States' appeal as untimely.

Plaintiffs filed the present action for a declaration that the transfer to Central States was effected in compliance with 29 U.S.C. § 1415. Furthermore, plaintiffs move for summary judgment requesting that Central States should immediately commence paying pension benefits to the named individual defendants and all other subsequent eligible applicants as of April 1, 1982, the effective date of the change in collective bargaining representation. In addition, plaintiffs move to be reimbursed for all benefit payments made to the named individual defendants subsequent to April 1, 1982, plus interest thereon. Defendants also move for summary judgment, claiming that the liability transfer notice by the IAM Plan was invalid, so that there has been no effective transfer of such liability. Defendants also seek to recover their costs from the plaintiffs.

## Discussion

ERISA § 4235, 29 U.S.C. § 1415, specifically enumerates the steps that employers and plan sponsors must take after a change has been made in collective bargaining representation. Section 1415(a) states that:

In any case in which an employer has completely or partially withdrawn from a

multiemployer plan (hereafter in this section referred to as the "old plan") as a result of a certified change of collective bargaining representative occurring after September 25, 1980, if participants of the old plan who are employed by the employer will, as a result of that change, participate in another multiemployer plan (hereafter in this section referred to as the "new plan"), the old plan shall transfer assets and liabilities to the new plan in accordance with this section.

It is the duty of the employer to notify the sponsor of the old plan that such a change in multiemployer plan participation has occurred. 29 U.S.C. § 1415(b)(1). After the change occurs, the employer has 30 days in which to notify the old plan. *Id.*

Lee Way complied with statutory requirements by notifying IAM on April 30, 1982, that it had stopped contributing to IAM Local Lodge 850 effective April 1, 1982, and that it had certified the Teamsters as the new collective bargaining representative for its Oklahoma City employees. Such notification made it necessary for IAM to prepare to transfer all relevant assets and liabilities to Central States. Section 1415(b)(2)(B) specifically states that the plan sponsor of the old plan shall:

notify the plan sponsor of the new plan of the benefits, assets, and liabilities which will be transferred to the new plan.

Central States alleges that the letter of June 7, 1984, from IAM to Central States did not constitute an effective transfer within the language of § 1415. The Court disagrees, concluding that the letter did constitute appropriate notice by which to effectuate a transfer.

■ The Court has found no reported cases construing the notice requirements of § 1415(b)(2)(B). Under a reasonable interpretation of the statute, however, IAM has complied with its directives. In its June 7, 1984, letter to Central States, IAM listed

the total present value of benefits to be transferred, the amount of nonforfeitable benefits described in 29 U.S.C. § 1415(b)(2)(A)(ii), and the amount of assets to be transferred. IAM also included a schedule setting out pertinent data for 108 actively covered employees formerly represented by IAM Local Lodge 850.[1] The Court finds that Central States had enough information at its disposal concerning the benefits, assets, and liabilities being transferred in order to assess the financial impact of the transfer and initiate an appeal if it anticipated substantial financial harm.

Defendant contends that because the IAM Fund incorrectly identified the participating employees and miscalculated the nonforfeitable benefits and assets, the transfer notice was invalid, such that there can be no effective transfer of such liability. The Court disagrees. The statutory notice provision sets out quite plainly what information is to be provided for an effective notice of transfer of liability. If the recipient has problems with the notice, such as disputes over the information contained, the relevant statute provides the new plan with an appeals process that allows the PBGC to prevent a transfer if the new plan would suffer "substantial financial harm." *See* 29 U.S.C. § 1415(b)(3). Congress thus has vested review of the old plan's calculations specifically in the PBGC so that alleged inaccuracy does not affect the validity of a transfer notice.

Section 1415(b)(3) of the MPPAA allows only 60 days after receipt of the transfer notice within which the new plan may file an appeal with the PBGC. The section provides in pertinent part:

■ Upon notification described in paragraph (2), if—

(B) the new plan either—

(i) fails to file an appeal, or

(ii) the corporation, pursuant to such an appeal, fails to find that the new plan would suffer substantial harm as a re-

---

1. The data included: Name, date of hire, date of birth, Social Security number, past service credit, future service credit, accrued service, years of vested service, dollar amount of monthly bene-

fits with and without past service credit, and the total amount of contributions for each individual.

sult of the transfer ... then the plan sponsor of the old plan shall transfer the appropriate amount of assets and liabilities to the new plan.

29 U.S.C. § 1415(b)(3). Central States failed to file an appeal with the PBGC until June 7, 1985, one year after it had received notification of the transfer from IAM. By failing to file an appeal, Central States implicitly authorized the transfer of assets and liabilities, which this Court determines should have taken place on August 7, 1984.

Defendant further contends, however, that a judicial hearing is required under the circumstances in order to determine if the IAM Plan transferred the appropriate amount of liabilities pursuant to § 1415(b)(3). Central States argues that the Supreme Court has consistently recognized that some form of hearing is necessary before an individual is "finally deprived of a property interest." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Defendants state that since IAM was inclined to maximize the employers withdrawal liability to itself and minimize the nonforfeitable benefits to be transferred to Central States in making its calculations, full judicial review is mandated in order that IAM provide financial justification for its figures. *See* 29 U.S.C. § 1415(g)(1).

■ The Court concludes that due process considerations do not dictate a broad judicial hearing under the present circumstances. The Supreme Court in *Mathews v. Eldridge* fully recognized that due process is a flexible concept, and held that an evidentiary hearing was not required prior to the termination of Social Security disability benefits. *Mathews,* 424 U.S. at 321, 96 S.Ct. at 896. *Mathews* affirmed the Supreme Court's view that statutorily mandated administrative hearings are valid processes in which parties may present their case. Only in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), did the Supreme Court prescribe a hearing approximating a judicial trial, since the plaintiff was a welfare recipient whose essential needs were at stake. *Mathews,* 424

U.S. at 333, 96 S.Ct. at 901. In the present case, Congress has provided the transferee plan with a specific kind and level of review procedure under 29 U.S.C. § 1415(b)(3). The PBGC appeal process provides the pretransfer review necessary to comport with due process constraints.

By failing to avail itself of the review process within the 60–day statutory time period, Central States forfeited its opportunity to contest the IAM Plan's asset, benefit, and liability calculations. Since ERISA was designed to ensure that employees and their beneficiaries would not be deprived of anticipated pension benefits, refusal to acknowledge a transfer and a belated request for review do not comport with the intentions of the statute. *See T.I.M.E.–DC, Inc. v. Management-Labor Welfare & Pension Funds,* 756 F.2d 939, 943 (2d Cir.1985). A fundamental message of § 1415 is that the transfer process should be expeditious. To permit Central States to delay a § 1415 transfer until it obtained full-scale judicial review would undermine the statutory scheme and defeat the Congressional goal of a speedy transfer process. Therefore, the Court holds that the § 1415 transfer has been in full effect since August 7, 1984.

For the foregoing reasons, the Court grants plaintiffs' motion for summary judgment and denies defendants' motion for summary judgment. An Order to that effect accompanies this Memorandum Opinion.

### ORDER

This matter is before the Court on cross-motions for summary judgment filed by plaintiffs I.A.M. National Pension Fund Benefit Plan A, *et al.,* and the defendants Central States Southeast and Southwest Areas Health and Welfare and Pension Funds, *et al.* For the reasons set forth in the accompanying Memorandum Opinion, it hereby is

ORDERED, that plaintiffs' motion for summary judgment is granted. It hereby further is

ORDERED, that defendants' motion for summary judgment is denied. It hereby further is

ORDERED, that defendant shall pay all future pension benefits to the named individual defendants and to all other subsequent eligible applicants as of April 1, 1982, the effective date of the change in collective bargaining representative. It hereby further is

ORDERED, that defendant is enjoined from denying that a transfer of assets and liabilities from the I.A.M. Fund to the Central States Fund effectively has taken place. It hereby further is

ORDERED, that defendant Fund is required to reimburse the I.A.M. Plan for any and all benefit payments made subsequent to April 1, 1982, to the named individual defendants, plus interest thereon.

SO ORDERED.