**I.A.M. NATIONAL PENSION FUND BENEFIT PLAN A, et al.**

v.

**CENTRAL STATES S.E. & S.W. AREAS HEALTH & WELFARE & PENSION FUNDS, et al., Appellants,**

Harold J. Yates, Trustee, Central States, et al.

No. 86–7023.

United States Court of Appeals, District of Columbia Circuit.

Argued May 4, 1987.

Decided Oct. 6, 1987.

William J. Nellis, Chicago, Ill., for appellants.

Robert T. Osgood, Washington, D.C., for appellees. Emmitt W. Robinson also entered an appearance.

Before EDWARDS and SILBERMAN, Circuit Judges, and KAUFMAN,* Senior District Judge.

Opinion for the Court filed by Senior District Judge FRANK A. KAUFMAN.

FRANK A. KAUFMAN, Senior District Judge:

The within appeal presents to this Court a question of first impression—whether the Employee Retirement Income Security Act (ERISA) and amendments thereto either completely or partially preclude judicial review of a transfer of assets and liabilities from one multiemployer pension plan to another such plan, following the certification of another union as the employees' collective bargaining representative, if the transferee plan has failed, either deliberately or inadvertently, to pursue its appropriate administrative remedy.

## FACTS

Lee Way Motor Freight, Inc. (Lee Way) employs persons in its facilities in Oklahoma who previously were members of the International Association of Machinists and Aerospace Workers (IAM), Local Lodge 850. Pursuant to a collective bargaining agreement, Lee Way made contributions on behalf of those and other employees to the International Association of Machinists and Aerospace Workers National Pension Fund (IAM Fund), a multiemployer pension plan which had been established by IAM so as to provide retirement benefits to persons who were members of that union.

In March, 1982, a majority of members of IAM employed at Lee Way's Oklahoma facility voted to change their collective bargaining representative from IAM to an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Teamsters). The National Labor Relations Board subsequently certified the Teamsters as the col-

lective bargaining representative for those employees.

Lee Way notified the IAM Fund, in a letter dated April 30, 1982, that there had been a certified change in the collective bargaining representative for the former IAM employees at its Oklahoma facility and that, accordingly, Lee Way had discontinued its contributions on behalf of those employees to the IAM Fund, effective April 1, 1982, and had begun making such contributions to Central States Pension Fund (Central States Fund), a multiemployer pension plan which provides retirement benefits to members of the Teamsters.

Following the receipt of that notice from Lee Way, the IAM Fund determined that Lee Way's withdrawal from participation in that Fund was "partial" since employees at Lee Way's other facilities in Texas and California continued to participate in the IAM Fund, and informed Lee Way that the calculation of Lee Way's partial withdrawal liability, pursuant to 29 U.S.C. § 1386(a), would have to be postponed until early 1984, i.e., one full plan year following withdrawal, in order to ascertain the amount owed to the plan by the employer.

In a letter sent on behalf of the IAM Fund to Central States Fund dated June 7, 1984, the IAM Fund informed Central States Fund of the former's intent to transfer to the latter the assets and liabilities arising out of the participation in the IAM Fund by the Oklahoma Lee Way employees. The IAM Fund also notified Central States Fund in that letter of, inter alia, the amount of withdrawal liability owed by Lee Way to the IAM Fund, and the names of all Oklahoma Lee Way employees who had participated in the IAM Fund, as well as each employee's birth date, social security number, service credits, accrued and vested benefits, and plan contributions.

On June 7, 1985—approximately one year after the IAM Fund had initially notified Central States Fund of the impending transfer of assets and liabilities [1]—Central

---

* Of the United States District Court for the District of Maryland, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. On June 25, 1984 Central States Fund requested from the IAM Fund more information with respect to the transfer. The district court found

States Fund appealed such transfer to the Pension Benefit Guaranty Corporation (PBGC). The latter entity dismissed that appeal, as untimely, under 29 U.S.C. § 1415(b)(3).

Asserting that the transfer of assets and liabilities from the IAM Fund was improper, Central States Fund declined to assume responsibility for the payment of pension benefits to the Oklahoma Lee Way employees. Thereafter the IAM Fund and its trustees filed the within case in the district court against Central States Fund, its trustees, and nine individuals,[2] seeking a declaratory judgment that the transfer to Central States Fund was effected in compliance with ERISA, and requesting the district court to order Central States Fund to commence payments of benefits to the individual defendants and to all other persons who became eligible for pension benefits as of April 1, 1982, and also to order Central States Fund to reimburse the IAM Fund for certain payments which the latter had made to the individual defendants.

On cross-motions for summary judgment, the district court concluded that the notice provided to Central States Fund by the IAM Fund was sufficient under ERISA, that Central States Fund should have appealed the adequacy of the notice as well as the transfer itself, if it had so desired, to the PBGC, and not sought the above described relief in the district court, and that due process does not require that such transfers be subjected to any form of judicial review. The district court, accord-

ingly, granted the IAM Fund's motion for summary judgment and denied Central States Fund's motion for summary judgment. *I.A.M. National Pension Fund Benefit Plan A v. Central States Southeast and Southwest Areas Health and Welfare and Pension Funds*, 643 F.Supp. 746 (D.D.C.1986).

## LAW

In this appeal, Central States Fund contends that the transfer of assets and liabilities is subject to full judicial scrutiny regardless of whether or not such transfer was appealed to the PBGC.[3] The IAM Fund, opposing that contention, asserts that Central States Funds' failure timely to appeal the transfer to the PBGC precludes judicial review of such transfer, and further contends that Central States Fund has effectively waived its contention that some form of *post*-transfer judicial review is available, by its failure specifically to raise in the district court the issue of the scope of post-transfer judicial review. For the reasons set forth below, this Court affirms in part, and reverses in part, the judgment of the district court and remands this case to the district court for further proceedings in accordance with this opinion.[4]

Subsequent to the enactment of ERISA in 1974, Congress became aware that many multiemployer pension plans were experiencing financial difficulties due to "a shrinking contribution base caused by industry declines resulting from such eco-

that the IAM Fund subsequently provided such data to the fullest extent reasonably possible.

2. The individual defendants are those Oklahoma employees of Lee Way who have sought pension benefits. Both the IAM Fund and Central States Fund contend that they are not responsible for such payments. Those individual defendants. did not participate in the proceedings below in the district court except to notify that court that they are eligible for benefits from either the IAM Fund or the Central States Fund.

3. Central States Fund has abandoned during the within appeal its contentions that the notice provided by the IAM Fund was inadequate and that due process requires a judicial hearing *prior* to the transfer of assets and liabilities.

4. Two related cases are also pending at this time. In one of those cases, ten individuals

have filed an action in the United States District Court for the Western District of Oklahoma against IAM Fund and Central States Fund seeking to recover pension benefits. *Walter v. International Association of Machinists Pension Fund*, No. CIV-86-1017-W. The district court stayed that suit. An interlocutory appeal to lift that stay is pending in the United States Court of Appeals for the Tenth Circuit.

In the other case, the IAM Fund has filed suit in the United States District Court for the District of Columbia against PepsiCo, Inc., the parent corporation of Lee Way, alleging that Lee Way has failed to pay the withdrawal liability which it allegedly owes to the IAM Fund. *I.A.M. National Pension Fund v. PepsiCo, Inc.*, No. 86-2881.

nomic pressures as foreign competition, technological obsolescence, or changing consumer or distribution patterns." H.R. Rep. No. 869 (I), 96th Cong., 2d Sess. 51, *reprinted in* 1980 U.S.Code Cong. & Ad. News 2918, 2919. Accordingly, in 1980, ERISA was amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) so as to:

> promote benefit security for multiemployer plan participants through the melioration of the financial condition of multiemployer plans, the elimination of incentives for plan termination, the provision of assistance to insolvent plans, and the establishment of the guarantee program on a fiscally sound basis at reasonable cost to the premium payers.

H.R.Rep. No. 869 (I), 96th Cong., 2d Sess. 51–52, *reprinted in* 1980 U.S.Code Cong. & Ad.News at 2919–20. The MPPAA provides, *inter alia,* that employers who withdraw from participation in multiemployer pension plans may be subject to a penalty termed "withdrawal liability." *See* 29 U.S.C. §§ 1381–1405. Congress also outlined in the MPPAA requirements and guidelines for mergers of multiemployer plans, 29 U.S.C. § 1411, for transfers between multiemployer plans, *id.,* for transfers between a multiemployer plan and a single employer plan, *id.* § 1412, and for partition of a multiemployer plan, *id.* § 1413.

Additionally, Congress enacted as part of the MPPAA a specific provision with respect to transfers of assets and liabilities from one plan to another in connection with a change in the employees' collective bargaining representative. That specific provision reads as follows:

> In any case in which an employer has completely or partially withdrawn from a multiemployer plan (hereafter in this section referred to as the "old plan") as a result of a certified change of collective bargaining representative occurring after September 25, 1980, if participants of the old plan who are employed by the employer will, as a result of that change participate in another multiemployer plan (hereafter in this section referred to as the "new plan"), the old plan shall transfer assets and liabilities to the new plan in accordance with this section.

29 U.S.C. § 1415(a). According to the congressional scheme, mapped out in section 1415, an employer is required to notify the sponsor of the old plan of a change in the collective bargaining representative within 30 days of the time that the employer ascertains that the change will take place. *Id.* § 1415(b)(1). After the "old plan" is so notified, the sponsor of the old plan must inform the employer, *inter alia,* of the amount of withdrawal liability owed to the old plan by the employer, and of the amount of assets and liabilities which will be transferred to the new plan. *Id.* § 1415(b)(2)(A)(i), (A)(iii). Additionally, the old plan must "notify the sponsor of the new plan of the benefits, assets and liabilities which will be transferred to the new plan." *Id.* § 1415(b)(2)(B).

Congress further set forth, in the MPPAA, a method by which the new plan might attempt to prevent such transfer:

> Within 60 days after receipt of the notice described in paragraph (2)(B), the new plan may file an appeal with the [Pension Benefit Guaranty C]orporation to prevent the transfer. The transfer shall not be made if the corporation determines that the new plan would suffer substantial financial harm as a result of the transfer. Upon notification described in paragraph (2), if—(A) the employer fails to object to the transfer within 60 days after the receipt of the notice described in paragraph (2) (A), or (B) the new plan either—(i) fails to file such an appeal, or (ii) the corporation, pursuant to such an appeal fails to find that the new plan would suffer substantial financial harm as a result of the transfer described in the notice under paragraph (2)(B) within 180 days after the date on which the appeal is filed, then the sponsor of the old plan shall transfer the appropriate amount of assets and liabilities to the new plan.

29 U.S.C. § 1415(b)(3).[5]

The MPPAA also contains a general provision authorizing civil actions:

> A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both.

29 U.S.C. § 1451(a)(1).

Resolution of the issues presented in this appeal requires that this Court determine whether Congress intended the appeal procedure outlined in section 1415(b)(3) to preclude—entirely or in part—judicial review pursuant to section 1451(a)(1), of the transfers covered by section 1415(b)(3). In the absence of congressional guidance either in the statute itself or in the legislative history of the MPPAA, determination of those questions presents some difficulty.

Congress expressly provided that in order to avoid a transfer completely, the new plan must timely appeal such transfer to the PBGC and demonstrate that the transfer would result in "substantial financial harm." 29 U.S.C. § 1415(b)(3). The clear statutory language states that the old plan "*shall* transfer" the assets and liabilities unless the new plan either fails to file an appeal to the PBGC or if, following a timely appeal to the PBGC, the corporation determines that such transfer will not cause "substantial financial harm" to the new plan, or if the corporation fails to make any decision within 180 days of the date upon which the appeal was filed. *Id.* § 1415(b)(3). If a new plan were permitted to circumvent the administrative remedy provided for by the MPPAA by filing suit, in a district court pursuant to section 1451(a)(1), seeking either to prevent or to rescind a transfer, the requirements of section 1415(b)(3) would be set aside while the new plan presented its complaints with respect to the transfer directly to a district court. *Cf. Federal Trade Commission v. Manager, Retail Credit Company, Miami Branch Office,* 515 F.2d 988, 994 (D.C.Cir. 1975).

■ In the within case Central States Fund did not timely appeal under section 1415(b)(3) the proposed transfer of assets and liabilities from the IAM Fund. In the absence of such a timely appeal, the transfer became effective sixty days after the receipt by Central States Fund of the notice sent by IAM Fund pursuant to that section. Accordingly, the district court's decision is affirmed to the extent that it concluded that the transfer of assets and liabilities has become effective and final.

However, the question remains as to whether Central States Fund can challenge, pursuant to section 1451(a)(1), *the amounts* of assets and liabilities transferred to it by the IAM Fund. Section 1415(b)(3) provides that when a transfer appropriately takes place, the old plan "shall transfer the *appropriate amount* of assets and liabilities to the new plan." 29 U.S.C. § 1415(b)(3) (emphasis added). The MPPAA also provides that if "the *appropriate amount* of assets and liabilities under this section" is transferred from an old plan to a new plan, then an employer's withdrawal liability may be reduced. *Id.* § 1415(c) (emphasis added).

■ There is nothing in either the statute or the legislative history which explicitly prohibits a new plan from maintaining an action for an accounting against the old plan pursuant to section 1451(a)(1). Indeed, the reference in section 1415(b)(3) to the transfer of an "appropriate amount" of assets and liabilities suggests that Congress contemplated that a new plan would have some way to assert a claim that an old plan did not transfer the correct amounts of assets, liabilities, or both. In enacting the MPPAA, one of the Congress' primary concerns was the financial stability of multiemployer pension plans. To permit an old

---

**5.** "[T]he [old] plan sponsor shall not transfer any assets to the new plan ...," 29 U.S.C. § 1415(e)(1), if the old plan is in reorganization or if such transfer of assets would result in reorganization pursuant to 29 U.S.C. § 1421, except as provided in 29 U.S.C. § 1415(e)(2). *Id.* § 1415(e)(1)(A)–(B).

plan to transfer to a new plan insufficient assets or inordinate liabilities might well jeopardize the financial well-being of the new plan in contravention of the legislative purpose. Accordingly, there is present in the statutory language and in the underlying statutory purpose the implication that a new plan is not bound by the calculations of assets and liabilities computed by the old plan. In sum, although Central States Fund may not seek in this litigation to avoid the transfer of assets and liabilities from the IAM Fund, it is entitled to assert herein a claim for an accounting pursuant to section 1451(a)(1).

Central States Fund has not specifically asserted in this case a counterclaim against the IAM Fund for an accounting, or for any other affirmative relief. However, Central States Fund arguably suggested the essence of a counterclaim in its Answer to the IAM Fund's complaint. Specifically, in paragraph 23 of its Answer, Central States Fund denied the IAM Fund's allegations that the latter had transferred the appropriate amount of liabilities. Thus, the question as to whether the IAM Fund has transferred the correct amount of liabilities was in effect placed before the district court. Furthermore, explicitly addressing that issue, the district court wrote:

> Defendant further contends, however, that a judicial hearing is required under the circumstances in order to determine if the IAM Plan transferred the appropriate amount of liabilities pursuant to § 1415(b)(3).
>
>    \*     \*     \*     \*     \*     \*
>
> By failing to avail itself of the review process within the 60-day statutory time period, Central States forfeited its opportunity to contest the IAM Plan's asset, benefit, and liability calculations.

6. The limitations period which governs an action brought pursuant to 29 U.S.C. § 1451(a)(1) is six years after the date on which the cause of action arose. 29 U.S.C. § 1451(f). Accordingly, there is no need to apply the retroactive approach of Fed.R.Civ.P. 15(c) in order for Central States Fund to be permitted so to amend, on remand.

7. There is a question as to whether a fund is a "fiduciary" for purposes of filing suit. *Compare Local 807 Labor-Management Pension Fund v.*

*I.A.M. National Pension Fund,* 643 F.Supp. at 749. In that context, and in the light of the liberal pleading standards inherent in the Federal Rules of Civil Procedure, it would be unfair not to remand the within case to the district court and require that court to provide to Central States Fund the opportunity to have an accounting pursuant to section 1451(a)(1).

On remand, the district court shall allow Central States Fund formally to amend its pleading so as to specifically state its counterclaim for an accounting,[6] and so as to reflect specifically the appropriate parties to the within action.[7] In so remanding, we in no way indicate any view as to whether the IAM Fund has or has not transferred to the Central States Fund the appropriate amount of liabilities.

*Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.*

*Owens Trucking, Inc.,* 585 F.Supp. 616, 617 (E.D. N.Y.1984) and cases cited therein *with Saramar Aluminum Company v. Pension Plan for Employees of the Aluminum Industry and Allied Industries of Youngstown Ohio Metropolitan Area,* 782 F.2d 577, 581 (6th Cir.1986). In this case, the trustees of Central States Fund who are fiduciaries have also been named as defendants by the IAM. Upon remand, Central States Fund should be permitted to amend its answer to take care of that problem.