J.W. WALTER; John Allen; Robert Jones; Norah Walker, Jr.; Eugene Gilliland; Sylvester Grayson; Daniel Looney; Lealus Thomas; Lloyd Fortune; John Davenport; Alonzo Anderson; I.B. Boyd; L.V. Davis; Cleophus Frost; Carnell Gentry; Gerald Goad; Donald F. Kennedy; Norvell Lancaster, Plaintiffs–Appellants,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS PENSION FUND; Central States, Southeast and Southwest Health and Welfare and Pension Funds, Defendants–Appellees.

No. 90–6037.

United States Court of Appeals, Tenth Circuit.

Nov. 12, 1991.

E.W. Keller of Keller, Fernald & Keller, Oklahoma City, Okl., for plaintiffs-appellants.

William J. Nellis, Central States Southeast and Southwest Areas Pension Fund, Rosemont, Ill. (Ronald L. Ripley and James D. Thomas, Linn & Helms, with him on the brief), for defendant-appellee Central States, Southeast and Southwest Areas Pension Fund.

Denis F. Gordon, Gordon & Barnett, Washington D.C. (Anne S. McCulloch and Susan J. Bannell, Gordon & Barnett, Washington, D.C., and Robert T. Osgood and Joseph P. Martocci, with him on the brief), for defendant-appellee I.A.M. Nat. Pension Fund.

Before MOORE and EBEL, Circuit Judges, and BROWN, District Judge.*

EBEL, Circuit Judge.

The primary issue we decide is whether a forfeiture clause contained in a multiemployer pension agreement violates the Employee Retirement Income Security Act of 1974 (ERISA)[1] as amended by the Multiemployer Pension Plan Amendments Act of 1980.[2] The forfeiture clause at issue provides that credit for years worked prior to the date the employer starts contributing to the plan on behalf of its employees is forfeited in the event the employer ceases making contributions to the plan. We hold that the clause does not violate ERISA.

FACTS

The plaintiff-appellant, J.W. Walter ("Walter"),[3] was hired by Lee Way Motor Freight, Inc. (Lee Way) on March 30, 1955. He worked for Lee Way until it closed in November of 1984 (a total of 29 years). Sometime in 1973, Lee Way began contributing to the International Association of Machinists and Aerospace Workers Pension Plan (IAM Plan) on Walter's behalf. During this time, the International Association of Machinists and Aerospace Workers was a certified collective bargaining representative for Lee Way's employees. Lee Way's contributions to IAM Plan on Walter's behalf continued until March, 1982, when the Oklahoma Lee Way employees voted to change unions and to make the Teamster's Union their certified collective bargaining agent. As a result of their vote to change authorized collective bargaining representatives, the Lee Way employees voted to make Central States Pension Plan (Central States Plan)—a plan operated by the Teamsters' Union—the exclusive plan for all of the Oklahoma Lee Way employees. On April 30, 1982, Lee Way notified IAM that it would no longer contribute to the IAM plan on behalf of its employees. On June 7, 1984, IAM notified Central States that it was transferring the accrued assets and liabilities to Central States.[4]

Central States refused to accept responsibility for payment of the benefits to the employees on the ground that IAM improperly transferred the assets and liabilities. IAM filed suit in the United States District Court for the District of Columbia seeking a declaratory judgment that the transfer was effected in compliance with ERISA. The district court held that the transfer

---

* The Honorable Wesley E. Brown, District Judge for the District of Kansas sitting by designation.

1. Pub.L. No. 93–406, 88 Stat. 829 (1974) (codified as amended in scattered sections of the U.S.C. including Titles 29 and 26).

2. Pub.L. No. 96–364, 94 Stat. 1208 (1980) (codified as amended in scattered sections of the U.S.C. including Titles 29 and 26).

3. There were eighteen plaintiffs in the case below. However, because Walter was the only plaintiff who perfected an appeal to this court

(see infra, Discussion, Part I), we will limit our recitation of the facts to those that are pertinent to Walter's appeal.

4. Because employees at other Lee Way facilities were still represented by IAM, the transfer was not completed for approximately two years. See ERISA § 4206, 29 U.S.C. § 1386(a); 29 U.S.C. § 1415; I.A.M. Nat'l Pension Fund Benefit Plan A v. Central States S.E. & S.W. Areas Health & Welfare & Pension Funds, 830 F.2d 1163, 1164 (D.C.Cir.1987).

was proper, and Central States appealed. The United States Court of Appeals for the District of Columbia Circuit affirmed the district court on the grounds that Central States had waived its right to contest the transfer under 29 U.S.C. § 1415(b)(3). However, the court of appeals remanded the case to the district court with instructions that it allow Central States to pursue a counterclaim for an accounting.

During the time Central States and IAM were litigating the transfer, the former Lee Way employees were unable to obtain their pension benefits. Thus, on April 16, 1986, eighteen former Lee Way employees filed suit in the United States District Court for the Western District of Oklahoma against both IAM and Central States seeking to recover their pension benefits. In addition, the employees claimed that the forfeiture provision contained in the IAM pension contract violated ERISA, that the defendants were liable for failing promptly to process their pension applications as well as their requests for information, and that the defendants breached their fiduciary duties owed to the employees. At the request of IAM and Central States, the Oklahoma federal district court stayed the proceedings pending the outcome of the District of Columbia litigation. Ultimately, the district court granted summary judgment for IAM against the plaintiffs based on the *IAM Nat'l. Pension Fund* holding by the D.C. Circuit and based on the failure of the plaintiffs to come forward to show that there was a genuine dispute on any material fact pertaining to plaintiffs' claims against IAM. A one day trial was held on June 21, 1989 against Central States. The district court, in an order dated January 5, 1990, resolved all of the plaintiffs' claims against plaintiff and in favor of Central States. The employees then sought to appeal to this court.

## DISCUSSION

We have raised, sua sponte, the issue whether all eighteen plaintiffs perfected their appeal to this court under *Torres v. Oakland Scavenger Company*, 487 U.S. 312, 315, 108 S.Ct. 2405, 2408, 101 L.Ed.2d

285 (1988). This issue will be covered in Part I of this opinion.

In addition, the employees have raised three principal issues: first, they contend that the district court erroneously upheld the validity of the forfeiture clause contained in the IAM pension contract; second they contend that the district court erred in dismissing their claim for money damages to compensate them for the defendants' failure promptly to process their pension applications and requests for information; and third, they contend that the district court failed to address the breach of fiduciary duty claim. These issues will be covered in Parts II, III and IV of this opinion respectively.

### I

The Supreme Court in *Torres* held that under Fed.R.App.P. 3(c), a federal appellate court does not have jurisdiction to consider claims of parties below who are not specifically named as appellants in the notice of appeal. *Torres*, 487 U.S. at 318, 108 S.Ct. at 2409. Specifically, the Court noted that an "et al." designation of appellants does not meet the specificity requirements of Rule 3(c). Similarly, we held in *Laidley v. McClain*, 914 F.2d 1386, 1389 (10th Cir.1990), that a statement that "plaintiffs hereby appeal" is insufficient to list the appellants.

In the instant case, the eighteen putative appellants were named on the notice of appeals as follows: "J.W. Walter, et al., Plaintiffs/Appellants, vs [sic] International Association of Machinists Pension Fund, et al., Defendants." Underneath the heading "Notice of Appeal" the notice states "Notice is hereby given that J.W. Walter, et al., Plaintiffs [sic] aboved [sic] named, hereby appeal...." Under *Torres* and *Laidley*, this notice is not sufficient to vest this court with jurisdiction over any appellant other than J.W. Walter.

The employees argue that to the extent the notice was defective, the defects were cured when they filed their docketing statement. In support of this argument, they cite *Hubbert v. City of Moore*, 923 F.2d 769 (10th Cir.1991). However, in *Hubbert* we

held that a docketing statement, which identified by name the parties taking the appeal, could cure a defective notice of appeal *if it was filed before the deadline for filing the notice of appeal had passed. Id.* at 771–72. In the instant case, the docketing statement was not filed before the filing deadline for the notice of appeal had passed. Therefore, the remaining seventeen plaintiffs cannot avail themselves of the *Hubbert* "curative" docketing notice exception. *See id.* at 772; *Laidley,* 914 F.2d at 1389. Throughout the remainder of this opinion, we will therefore analyze the issues only insofar as they pertain to J.W. Walter. With regard to the other plaintiffs, the district court order is final.

## II

The first argument raised by Walter is that the forfeiture provision of the IAM pension plan violates ERISA, specifically 29 U.S.C. § 1411(b). In order to understand this argument, we need to review the basic details of the IAM pension plan. The IAM pension plan recognizes two different types of service years that are credited towards the employee's vesting date as well as towards determining the amount of the monthly benefit. The first is called "Past Service Credit" and is defined as credit earned for the years worked with the employer *prior to the date* the employer begins contributing to the pension plan on the employee's behalf. The second is called "Future Service Credit" and is defined as credit for the years worked with the employer *after the date* the employer begins contributing to the pension plan on the employee's behalf. Under the IAM pension plan, Future Service Credit and Past Service Credit apply equally towards vesting and towards calculating the employee's monthly retirement benefit. The only difference between the two is that Past Service Credit is subject to forfeiture:

> If the participation of a Contributing Employer terminates and should that employer, or its successor, thereafter continue in the same or related business, then the actuarial limitations of this Section shall apply.

.   .   .   .   .

> Past Service Credit based upon employment with such employer shall be cancelled retroactively, notwithstanding any contrary provision of this Plan....

IAM Pension Plan § 9.04, at 112 (contained in Addendum to Appellants' Br. at 28).[5] Pursuant to § 9.04 of the pension plan, IAM cancelled nine years of Past Service Credit Walter had earned for the years he had worked at Lee Way prior to the date when Lee Way began contributing to the IAM Plan on his behalf. This forfeiture did not divest Walter of all of his pension rights because under the IAM Plan, a pensioner's rights vest at ten years—Walter had approximately sixteen years of Future Service Credit that were unaffected by the forfeiture provision. However, according to Walter's figures, the loss of nine years of Past Service Credit reduced the amount of Walter's monthly pension award at normal retirement by $184 per month. Appellants' Br. at 12.

■ Walter argues that the forfeiture provision violates 29 U.S.C. § 1411, which is entitled "Mergers and transfers between multiemployer plans." Section 1411 governs mergers and transfers in general: "Unless otherwise provided in regulations prescribed by the corporation, a plan sponsor may not cause a multiemployer plan to ... engage in a transfer of assets and liabilities to ... another multiemployer plan, unless such ... transfer satisfies the requirements of subsection (b) of this section." 29 U.S.C. § 1411(a). Walter contends that the forfeiture provision is invalid because it fails to meet section 1411(b)'s requirement that "no participant's or beneficiary's accrued benefit will be lower immediately after the effective date of the ... transfer than the benefit immediately before that date...." 29 U.S.C. § 1411(b). Clearly, if section 1411 applies, the forfeiture provision is invalid because the provision retroactively reduced Walter's accrued

---

**5.** The remaining portion of § 9.04 includes a number of exceptions to the forfeiture requirement—none of which applies or are at issue in this case.

benefit by eliminating his Past Service Credit.[6]

The flaw in Walter's argument is that section 1411 does not apply—the relevant provision is section 1415 entitled "Transfers pursuant to change in bargaining representative." Section 1415(a) requires that "[i]n any case in which an employer has completely or partially withdrawn from a multiemployer plan ... *as a result of a certified change of collective bargaining representative* ..., the old plan shall transfer assets and liabilities to the new plan *in accordance with this section.*" 29 U.S.C. § 1415(a) (emphasis added). The inapplicability of section 1411 is further evidenced by section 1415(f), which provides "[n]otwithstanding subsections (b) and (e) of this section, the plan sponsors of the old plan and the new plan *may agree to a transfer of assets and liabilities that complies with sections 1411 and 1414 of this title, rather than this section ...*" 29 U.S.C. § 1415(f) (emphasis added). In other words, the specific (section 1415) trumps the general (section 1411) in the absence of a contrary agreement between the sponsors of the old and new Plans[7] (and there is no such agreement here).

■ Section 1415(b), which addresses the amount of benefits to be transferred from the old plan to the new plan, does not forbid a reduction in the accrued benefits as a result of the transfer. Instead, it requires only that the old plan transfer "the appropriate amount of assets and liabilities to the new plan." 29 U.S.C. § 1415(b)(3). Under section 1415(g)(1), an "appropriate amount of assets" is "the amount by which the value of the nonforfeitable benefits to be transferred exceeds the amount of the employer's withdrawal liability to the old plan...."[8]

■ There is no language in section 1415(b) suggesting that a benefit cannot be forfeitable. To the contrary, the language of section 1415(b), *supra,* indicates a Congressional acceptance of these forfeiture provisions.[9] Thus, because section 1411 is inapplicable and because section 1415 does not require that an accrued benefit not be decreased following a transfer as a result of a certified change in collective bargaining representatives, we reject Walter's claim that the forfeiture provision of the IAM pension contract violates ERISA.[10]

6. Under 29 U.S.C. § 1002(23), an accrued benefit is defined as "the individual's accrued benefit determined under the plan ... expressed in the form of an annual benefit commencing at normal retirement age...." In this case, Walter contends that his accrued benefit immediately before the effective date of the transfer was $560.00 per month, and that after the forfeiture provision was triggered—immediately after the transfer—his accrued benefit dropped to $376.00 per month. Appellants' Br. at 12.

7. The regulations support this interpretation. 29 C.F.R. § 2672.2 is entitled "Requirements for mergers and transfers." One of the requirements listed is that "[n]o participant's or beneficiary's accrued benefit may be lower immediately after the effective date of the ... transfer than the benefit immediately before the ... transfer." 29 C.F.R. § 2672.2(a)(1). However, subsection (c) provides that plan sponsors involved in "[t]ransfers of assets and liabilities pursuant to a certified change in bargaining representative ... are not required to comply with this part." 29 C.F.R. § 2672.2(c).

8. An employer's withdrawal liability is basically a liability that arises when the employer stops contributing to a plan. The purpose behind the liability is to guarantee the plan's financial sta-

bility. *See* H.R.Rep. No. 869, 96th Cong., 2d Sess. pt. 2 at 15–16 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 2918, 3004–3005.

9. The relevant legislative history behind the Multiemployer Pension Plan Amendment Act of 1980 is in accord. *See generally* H.R.Rep. No. 96–869, pt. 1, at 115, *reprinted in* 1980 U.S.Code Cong. & Admin.News at 2983 ("Under the bill, a multiemployer plan would not fail to meet the vesting requirements of ERISA because the plan provides for the forfeiture of accrued benefits attributable to service with a participant's employer before the employer was required to contribute to the plan in the event that the employer ceases making contributions to the plan."); *Id.,* pt. 2 at 73, *reprinted in* 1980 U.S.Code Cong. & Admin.News at 3059 ("Under the bill, a multiemployer plan does not fail to meet the vesting requirements of ERISA merely because the plan provides for the forfeiture of accrued benefits attributable to service with a participant's employer before the employer was required to contribute to the plan in the event that the employer ceases making contributions to the plan.").

10. In his brief, Walter raises a constitutional claim and an unjust enrichment claim relating to the forfeiture provision. As these claims were not raised below, we will not address them

### III

Walter's next argument is that Central States did not respond promptly to his application for pension benefits and to his requests for information. Walter argues that according to Central States' own records, Central States received Walter's application in August of 1985, and that it did not respond until September 8, 1986. Walter also alleges that he requested Central States to send him information regarding the status of his pension. Finally, Walter alleges that he did not begin receiving payments until late 1986 or early 1987. The district court did not disagree with Walter's recitation of the facts; however, it nonetheless ruled that Walter was not entitled to relief. For purposes of reviewing Walter's claim, we likewise will presume the accuracy of Walter's above mentioned factual allegations.

Walter contends that he has a right to recover damages from Central States under 29 U.S.C. §§ 1025(a) & 1132(c), and 29 C.F.R. § 2560.503–1(c). 29 U.S.C. § 1025 requires a plan administrator to respond to requests for information, and 29 U.S.C. § 1132 provides for a $100 a day penalty against plan administrators who do not respond promptly to requests for information. 29 C.F.R. § 2560.503–1(e) requires the plan to inform applicants of the denial or partial denial of their claim within ninety days after receipt of their claim.

■ Sections 1025 and 1132 do not address plan duties—instead, they only refer to the plan administrator's duties.[11] Therefore, the district court correctly held that

these two ERISA provisions cannot form the basis for Walter's claim against Central States and IAM.[12] *Cf. Groves v. Modified Retirement Plan for Hourly Paid Employees of the Johns Manville Corporation and Subsidiaries,* 803 F.2d 109, 116 (3d Cir.1986) (holding that ERISA provisions providing for recovery against the "plan" cannot be used to recover against the "plan administrator" because "the terms 'plan' and 'plan administrator' refer to two entirely distinct actors ... [and] are terms of art").

■ 29 C.F.R. § 2560.503–1 was promulgated by the Secretary of Labor pursuant to 29 U.S.C. § 1133. Section 1133 reads as follows:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Pursuant to section 1133, the Secretary promulgated 29 C.F.R. § 2560.503–1(e) which provides:

(1) If a claim is wholly or partially denied, notice of the decision ... shall be furnished to the claimant within a rea-

---

here. In addition, Walter raises an estoppel claim. Although it does not appear that Walter formally raised the estoppel claim in the court below, the district court addressed it and dismissed it. The district court's decision was proper. *See, e.g., Straub v. Western Union Telegraph Co.,* 851 F.2d 1262, 1265 (10th Cir. 1988) (no liability under ERISA can be based upon a purported oral modification of the terms of a pension plan).

**11.** Section 1132 provides in pertinent part:

Any *administrator* who fails or refuses to comply with a request for any information ... may in the court's discretion be personally liable to such participant or beneficiary in the

amount of up to $100 a day from the date of such failure or refusal....

29 U.S.C. § 1132(c) (emphasis added). Section 1025 provides in pertinent part:

Each *administrator* of an employee pension benefit plan shall furnish to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information—

(1) the total benefits accrued, and

(2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

29 U.S.C. § 1025(a) (emphasis added).

**12.** The plan administrator is not a named defendant in this lawsuit.

sonable period of time after receipt of the claim by the plan.

(2) If notice of the denial of a claim is not furnished ... within a reasonable time, the claim shall be deemed denied....

(3) For purposes of [the above] paragraphs ..., a period of time will be deemed to be unreasonable if it exceeds 90 days after receipt of the claim by the plan....

29 C.F.R. § 2560.503–1(g). Walter argues that Central States violated 29 C.F.R. § 2560.503–1(g): "By Central States' own admission, they have not complied with this important disclosure provision." Appellants' Br. at 31.[13] However, even accepting the facts as stated, ERISA does not provide a private cause of action for damages to compensate a pensioner for delay. *See Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985); *Ashenbaugh v. Crucible, Inc., 1975 Salaried Retirement Plan,* 854 F.2d 1516, 1532 (3d Cir.1988) (noting the general principle "that an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy."), *cert. denied,* 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1019 (1989). In *Massachusetts Mutual,* the Court declined to craft a remedy under which an employee benefit plan may be held personally liable to a plan participant or beneficiary for extra-contractual damages caused by improper or untimely processing of benefit claims: "The six carefully integrated civil enforcement provisions [14] found in ... the statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* (emphasis in original). There is no explicit provision providing a cause of action for damages caused by a delay in processing one's pension application, and we decline Walter's invitation to fashion one from 29 C.F.R. § 2650.503–1(e).

### IV

■ Finally, Walter raises a breach of fiduciary duty issue.[15] Walter bases his argument on 29 U.S.C. § 1109:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses *to the plan* resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through

13. Throughout his brief, Walter's attorney miscites the relevant provision as 29 C.F.R. § 256.-503–1(c).

14. The six enforcement provisions referred to in the Court's opinion fall under ERISA § 502(a) (codified at 29 U.S.C. § 1132(a)):

A civil action may be brought—
(1) by a participant or beneficiary—
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;
(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or
(6) by the Secretary to collect any civil penalty under subsection (i) of this section.
29 U.S.C. § 1132(a).

15. In his brief, Walter claims that the district court did not address this issue. Appellants' Br. at 33. Walter contends that it was raised in the Final Pretrial Order. Although the Final Pretrial Order was never made a part of the record on appeal, we nonetheless requested it from the court below. This issue was mentioned in the Final Pretrial Order, but we cannot tell whether, in fact, it was raised during trial. However, despite our reservations, we will nonetheless review this issue.

use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

29 U.S.C. § 1109 (emphasis added).

Walter is not entitled to relief under this section. Under section 1109, a fiduciary who breaches his fiduciary duty is liable to the plan—not to the beneficiaries individually. *See Massachusetts Mutual*, 473 U.S. at 141–42, 105 S.Ct. at 3090; *Bryant v. International Fruit Product Co.*, 886 F.2d 132, 135 (6th Cir.1989) (per curiam). Therefore, even if we were to agree with Walter that the district court failed to address this issue, its oversight was not critical because Walter is not entitled to relief under section 1109.[16]

## CONCLUSION

In Part I we held that of the eighteen original plaintiffs in the court below, only one—J.W. Walter—perfected an appeal to this court. In Part II we held that the forfeiture provision contained in the IAM pension contract does not violate ERISA. In Part III we held that the appellant's claim for monetary damages based upon Central States' failure promptly to process his pension application and to respond to his requests for information is without merit. Finally in Part IV we held that appellant is not entitled to damages under 29 U.S.C. § 1109. Therefore, the district court's orders are AFFIRMED.

---

**16.** We similarly find no error in the factual findings of the district court nor in its order awarding costs against plaintiffs.