914 F.2d 1386
 Wilma LAIDLEY; Cindy Thulin; Bettye Redding; and Renee
Waisner, Plaintiffs-Appellants,
v.
Lantz McCLAIN, individually and in his official capacity as
District Attorney of Creek County, State of Oklahoma; Ted
Ritter, individually and in his official capacity as
Director of the District Attorney's Training Coordination
Council; Board of County Commissioners, State of Oklahoma,
County of Creek, Defendants-Appellees.
 No. 89-5016.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 13, 1990.
 
 1
 Chadwick Smith, Tulsa, Okl., for plaintiffs-appellants.
 
 
 2
 Robert A. Nance, Asst. Atty. Gen. of Oklahoma, Oklahoma City, Okl., Robert H. Henry, Atty. Gen. of Oklahoma, with him on the brief, for defendants-appellees.
 
 
 3
 Before McKAY and ANDERSON, Circuit Judges, and BROWN, District Judge.*
 
 
 4
 WESLEY E. BROWN, Senior District Judge.
 
 
 5
 The plaintiffs in this action were employees in the district attorney's office in District No. 24 in Oklahoma. In 1986, the defendant Lantz McClain was elected district attorney in that district. Upon taking office, Mr. McClain told the plaintiffs that he did not intend to retain them as employees. The plaintiffs, who had supported Mr. McClain's opponent in the district attorney primary election, filed this action under 42 U.S.C. Sec. 1983, alleging that the defendants had violated their First Amendment rights of free speech and association by terminating their employment. Additionally, plaintiffs alleged a Sec. 1983 claim for deprivation of a property interest without due process of law and they asserted various pendant state claims.
 
 
 6
 The district court granted the defendants' motions for summary judgment on the Sec. 1983 claims and dismissed the plaintiff's pendant state claims. The district court stated that there was no evidence to support a finding that the plaintiffs were discharged because of their political activities. Plaintiffs challenge this ruling on appeal. For the reasons set forth herein, we find that we have no jurisdiction over the appeals of plaintiffs Bettye Redding, Cindy Thulin, and Renee Waisner. Accordingly, those appeals will be dismissed. We have jurisdiction to consider the appeal of Wilma Laidley. Our review of the record shows that plaintiff Laidley has raised a genuine issue of material fact as to whether she was terminated by Mr. McClain because of her political activities. We therefore reverse the district court insofar as it granted summary judgment in favor of McClain individually against plaintiff Laidley.
 
 
 7
 I. Jurisdiction.
 
 
 8
 The court requested briefing by the parties as to whether the notice of appeal filed in this case was sufficient to confer appellate jurisdiction over all of the plaintiffs or only over the plaintiff Laidley. This question was raised in light of Torres v. Oakland Scavenger Company, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), in which the Supreme Court held that the failure to specify a party in the notice of appeal constituted a jurisdictional bar to that party's appeal. The notice of appeal filed in the instant case specifically named only plaintiff Wilma Laidley.[1]
 
 
 9
 We find that Torres controls the fate of the plaintiffs other than Wilma Laidley. Thus, the appeals of Bettye Redding, Cindy Thulin, and Renee Waisner (hereinafter referred to collectively as "plaintiffs") must be dismissed for lack of jurisdiction. In Torres, the court noted that Federal Rule of Appellate Procedure 3(c) provides in part that "[t]he notice of appeal shall specify the party or parties taking the appeal...." Although Rule 3(c) also provides that an appeal shall not be dismissed for informality of the form or title of the notice of appeal, this provision does not aid the plaintiffs' cause. The failure to name a party in the notice of appeal is more than an excusable informality; it constitutes a failure of that party to appeal. Torres, at 315, 108 S.Ct. at 2408, 101 L.Ed.2d at 290. The Supreme Court made clear that the specificity requirement of Rule 3(c) is a jurisdictional threshold that cannot be waived by a court. Id. In this context, it is important to keep in mind that under Article III of the Constitution this court has only such jurisdiction as is granted to it by Congress. The Supreme Court recognized that construing Rule 3(c) as a jurisdictional prerequisite could lead to harsh results, but concluded that this harshness was imposed by the legislature and not by the judicial process. Id., at 318, 108 S.Ct. at 2409, 101 L.Ed.2d at 292.
 
 
 10
 The plaintiffs make several arguments as to why Torres should not apply in this case, but these arguments are of no avail. Plaintiffs first contend that the use of "et al." and the reference to "plaintiffs" in the notice of appeal were sufficient to satisfy Rule 3(c). We cannot agree. The Supreme Court flatly stated that the use of the phrase "et al." utterly fails to provide notice of the identity of the appellants. Torres, at 318, 108 S.Ct. at 2409, 101 L.Ed.2d at 292. Moreover, we agree with those courts that have found that the designation of unnamed appellants simply as "plaintiffs" does not meet the standard of Rule 3(c). See e.g., Minority Employees v. Tennessee Department of Employment Security, 901 F.2d 1327 (6th Cir.1990) (en banc); Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 317 (1st Cir.1989) (en banc). The specificity requirement of Rule 3(c) is met only by some designation that gives fair notice of the specific individual or entity seeking to appeal. Torres, 487 U.S. at 318, 108 S.Ct. at 2409, 101 L.Ed.2d at 292.
 
 
 11
 Although a statement that "plaintiffs hereby appeal," when combined with an "et al." designation of some of the plaintiffs, could be interpreted to mean that all of the plaintiffs intend to appeal, it could also be understood as designating less than all of the plaintiffs as appellants. Clearly, the specificity requirement of Rule 3(c) was intended to eliminate ambiguity as to the identity of the appellants. Cf. Minority Employees, 901 F.2d at 1336 ("Any ambiguity will defeat the notice.") and In re Woosley, 855 F.2d 687 (10th Cir.1988) ("The Supreme Court answered the question whether to require strict compliance with the rule in Torres...."). Thus, the failure to specifically designate a party somewhere in the notice of appeal is a jurisdictional bar to that party's appeal. Cf. Tri-Crown, Inc. v. American Federal Savings & Loan, 908 F.2d 578 (10th Cir.1990) (Naming appellant in the caption of the notice of appeal is sufficient).
 
 
 12
 Plaintiffs also argue that the purpose behind Rule 3(c) has been satisfied here because both the defendants and the court believed that all of the plaintiffs were appealing. Be that as it may, the Torres court precluded any such subjective inquiry because it rejected the suggestion that a harmless error analysis should be applied to defects in the notice of appeal. Torres, 487 U.S. at 317 n. 3, 108 S.Ct. at 2409 n. 3, 101 L.Ed.2d at 291 n. 3 ("[A] litigant's failure to clear a jurisdictional hurdle can never be 'harmless' or waived by a court."). The designation of the specific individual seeking to appeal is just such a jurisdictional hurdle. Plaintiffs also urge the court to consider the docketing statement filed with the court as being incorporated into the notice of appeal. See Brotherhood of Railway Carmen v. Atchison, Topeka & Santa Fe Railway, 894 F.2d 1463 (5th Cir.1990). This argument would not assist the plaintiffs, however, because their docketing statement was not filed within thirty days of the entry of the judgment against them. As such, any attempt to bolster the notice of appeal would be untimely. This court is without power to extend the time for filing a notice of appeal, either directly or indirectly. Torres, 487 U.S. at 315, 108 S.Ct. at 2408, 101 L.Ed.2d at 290 (Permitting courts to exercise jurisdiction over unnamed parties after the time for filing a notice of appeal has passed is equivalent to permitting courts to extend the time for filing a notice of appeal.).
 
 
 13
 Finally, plaintiffs argue that there has been no effective final judgment against them because the district court's judgment was not set forth on a separate document as required by Fed.R.Civ.P. 58. We have examined the court's order granting summary judgment and we find that it meets the requirements of Rule 58. The fact that the first sentence of the order adopted the report of the magistrate does not require that two documents be used instead of one. United States v. Perez, 736 F.2d 236, 238 (5th Cir.1984). The order contains no discussion of the reasoning behind the court's decision and it cannot be considered to be an opinion or memorandum. The order was clearly intended to be the final directive of the court disposing of all the claims. The order was properly entered on the docket on December 13, 1988, and the notice of appeal now at issue was filed within thirty days of that entry. Clearly, the plaintiffs were not mislead into thinking that the court's order was not a final judgment. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). In these circumstances, we can find no violation of Rule 58. United States v. Clearfield State Bank, 497 F.2d 356, 358 (10th Cir.1974) (Rule 58 applies where it is uncertain whether a final judgment has been entered).
 
 
 14
 For these reasons, the appeals of Bettye Redding, Cindy Thulin, and Renee Waisner are dismissed for lack of jurisdiction. We have jurisdiction over the appeal of Wilma Laidley and proceed to address the merits of that appeal.
 
 
 15
 II. Summary Judgment.
 
 
 16
 Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). For a plaintiff to avoid summary judgment, there must be sufficient evidence from which a jury could find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing a summary judgment, we resolve all factual disputes and draw all inferences in favor of the person against whom the judgment was granted. Reazin v. Blue Cross & Blue Shield, 899 F.2d 951, 979 (10th Cir.1990), cert. den., --- U.S. ----, 110 S.Ct. 3241, 111 L.Ed.2d 752.
 
 
 17
 We will address in turn the district court's grant of summary judgment in favor of each of the defendants.
 
 
 18
 A. Defendant Ted Ritter. The defendant Ritter is the Executive Coordinator for the District Attorneys' Training Coordination Council ("DATCC") in the state of Oklahoma. DATCC was created as a special division of the Attorney General's office. The Executive Coordinator is appointed by and serves at the pleasure of the council. Generally, the council has the power to perform such functions as will strengthen the criminal justice system in Oklahoma and improve prosecutor efficiency and effectiveness in enforcing the laws of the state. Okla.Stat.Ann. tit. 19, Sec. 215.28. The council was designated as the state agency responsible for the administration and disbursement of all salaries and expenses of the offices of the district attorneys authorized by law. Id. at Sec. 215.30. Mr. Ritter described the council as "basically the administrative agency for the DA's statewide. We administer payroll, insurance, retirement, process travel claims, the maintenance and operation budgets, we reimburse the counties and process that paperwork...." (Ritter depo. at 6). The council puts on training seminars for the district attorneys and their staffs. It also administers federal grants and state funds. Id.
 
 
 19
 In her complaint, plaintiff alleged that the defendant Ritter conspired with Lantz McClain and others to accomplish the removal of herself and other David Young supporters from the district attorney's office in Creek County. We have examined the record and find that it is void of any evidence of personal involvement by Mr. Ritter in a conspiracy to deprive Ms. Laidley of her constitutional rights. Plaintiff also alleged that Mr. Ritter failed to properly train Mr. McClain, and that this lack of training lead to the violation of plaintiff's First Amendment rights. As an initial matter, we find no indication under Oklahoma law that DATCC has any authority to employ, supervise, or discharge any employee of a district attorney. Employees in the district attorney's office serve at the pleasure of the district attorney. Okla.Stat.Ann. tit. 19, Sec. 215.36(C). Although DATCC has a duty to provide some training and advice to the state's district attorneys, plaintiff has cited nothing to show that DATCC is obligated to provide the type of training she alleges should have been given. Moreover, the plaintiff has failed to show that a lack of training by DATCC caused the constitutional deprivation of which she complains. Mr. McClain readily admitted that he was aware prior to taking office that it would violate an employee's First Amendment rights to discharge them based on political affiliation or in retaliation for exercising their First Amendment rights. (McClain depo. at 56-57). Thus, DATCC's failure to inform Mr. McClain of something that he already knew cannot be considered as the cause of Mr. McClain's alleged violation of plaintiff's rights.[2] See Wulf v. City of Wichita, 883 F.2d 842, 864 (10th Cir.1989) (In order to establish personal liability under Sec. 1983, there must be a causal connection shown between the official's conduct and the deprivation of a federal right). We conclude that the district court correctly granted summary judgment in favor of the defendant Ritter.[3]
 
 
 20
 B. Board of County Commissioners of Creek County. Plaintiff named the county commissioners of Creek county as a defendant in this action. Plaintiff argued that the county was liable for the acts of the district attorney since his district includes Creek County. The defendants responded by arguing that Mr. McClain was a state officer rather than a county officer. The district court agreed with the defendants and granted the county's motion for summary judgment.
 
 
 21
 There is extensive discussion in the record before us of the nature of the office of district attorney in Oklahoma. The office was created in 1965 and replaced the office of county attorney. At that time, Creek and Okfuskee Counties were denominated as District Number 24. The duties of a district attorney are set forth generally in Okla.Stat.Ann. tit. 19, Sec. 215.4 and are implemented by other state statutes. A district attorney is to prosecute all actions for crime in his district and prosecute or defend civil actions in which any county in his district is interested. Id. The District Attorney's Council, a state agency, pays all salaries and expenses of the office of district attorney, including the salary of the district attorney, from state treasury funds. Id. at Sec. 215.28. All employees of the district attorney serve at the pleasure of the district attorney and are deemed to be state employees for all purposes. Id. at Secs. 215.30 and 215.31. The district attorney is elected in the same manner as district judges in Oklahoma. Before entering office, the district attorney must give a bond of $5,000.00 payable to the state, with the premium being paid by the state. Id. at Sec. 215.3.
 
 
 22
 In contrast to the extensive funding and control exercised by the state over the office of district attorney, there is little in the record to show that the two counties comprising District No. 24 exercise control over the district attorney or his officers. Although the voters of Creek and Okfuskee Counties elect the district attorney, the office as it is arranged by statute seems to be an extension of the state. The Oklahoma Supreme Court has not spoken definitively on the issue, but there is some indication that it would view the district attorney as a state officer. See State ex rel. Trimble v. Brown, 488 P.2d 1217, 1220 (Okla.1971). See also Russell v. Henderson, 603 P.2d 1132, 1135 (Okla.1979). Cf. Rozek v. Topolnicki, 865 F.2d 1154, 1158 (10th Cir.1989) (Colorado district attorneys are state officers). We agree with the district court's conclusion that under Oklahoma law the district attorney is an arm of the state. Plaintiff has failed to demonstrate that Creek County is in any way liable for the actions of the district attorney and we therefore affirm the district court's grant of summary judgment in favor of the county commissioners.[4]
 
 
 23
 C. Defendant Lantz McClain.
 
 
 24
 1. Official capacity. Plaintiff brought suit against the defendant McClain individually and in his official capacity as district attorney. It is well settled that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). Because the district attorney is a state officer, the plaintiff's claim is therefore a suit against the state of Oklahoma. We agree with appellees that, as such, the claim is prohibited by the Eleventh Amendment, which generally bars an action for damages against a state in federal court.[5] See Meade v. Grubbs, 841 F.2d 1512, 1525 (10th Cir.1988) (Attorney General of Oklahoma is entitled to Eleventh Amendment immunity). See also Rozek v. Topolnicki, 865 F.2d 1154, 1158 (10th Cir.1989) (Suit against a Colorado district attorney barred by Eleventh Amendment immunity). We therefore affirm the summary judgment in favor of defendant McClain in his official capacity.
 
 
 25
 2. Defendant McClain individually. Plaintiff alleged that the defendant McClain decided not to retain her as an employee because she supported McClain's opponent in the 1986 Democratic primary for district attorney. The Supreme Court has made clear that such conduct violates a government employee's First Amendment rights. Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). See also Rutan v. Republican Party of Illinois, --- U.S. ----, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). The district court, adopting the findings of the magistrate, found that there was no evidence that plaintiff's discharge was based upon political grounds. We have reviewed the record and find that when all inferences from the evidence are drawn in plaintiff's favor, plaintiff has raised a genuine issue of material fact as to whether her exercise of protected First Amendment activity was a substantial or motivating factor in her termination. See Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).
 
 
 26
 The facts in the light most favorable to the plaintiff are as follows: Wilma Laidley was hired by former district attorney David Young as an investigator in the Child Support Division of the district attorney's office in Creek County in March, 1979. Her duties included locating absent parents, serving process, sending letters, taking care of paternity interviews, making contact with clients, answering telephones, and interviewing walk-in clients. She was a certified peace officer and had seventeen years of service toward her retirement. She was an above-average employee and had no disciplinary record.
 
 
 27
 The August, 1986 Democratic primary pitted the incumbent district attorney David Young against Lantz McClain. Ms. Laidley was informed by persons acting on behalf of Lantz McClain that her job would be secure if McClain were elected. During the primary campaign, Ms. Laidley supported David Young by wearing T-shirts, participating in parades, stuffing envelopes, making phone calls and putting out yard signs. Her photograph appeared with other staff members in a series of newspaper advertisements endorsing David Young. Mr. McClain knew that the plaintiff supported David Young. (McClain depo. at 68). McClain defeated Young in the primary, which was a bitter campaign marked by personal accusations from both sides concerning a lack of integrity. The candidates represented two different factions of the Democratic party.
 
 
 28
 In October of 1986, plaintiff called McClain for an employment interview. McClain told the plaintiff that her job was secure. On December 29, 1986, Mr. McClain came to Ms. Laidley's office. He told her that the Department of Human Services ("DHS"), which funded the Child Support Enforcement Unit, was eliminating her investigator position and that she would therefore not have a job when McClain took office on January 5, 1987. Ms. Laidley asked if she could have a secretarial position that was vacant but McClain told her that he had already hired someone else for the job.
 
 
 29
 The district court determined that McClain let the plaintiff go for nonpolitical reasons. The court stated that the Department of Human Services had eliminated the plaintiff's job as part of a cost-cutting drive. When the facts are viewed in the light most favorable to the plaintiff, however, this finding is not supportable because it overlooks the role of Mr. McClain in the plaintiff's dismissal. The Department of Human Services did not decide which particular positions would be funded or how the Child Support Division would be organized or staffed. Only the district attorney had the authority to make those decisions. The Department did fund the Child Support Unit and apparently established budget limits for the Unit. The record may support a finding that DHS official requested that Mr. McClain take steps to cut his budget in the Child Enforcement Unit. This fact does not shield the defendant from all liability, however. The plaintiff has raised a legitimate question as to whether the defendant used the budget as a pretext for dismissing her.
 
 
 30
 Although Mr. McClain's decision to terminate the plaintiff may have been for legitimate budgetary reasons, there is also some circumstantial evidence to suggest that plaintiff's support of Mr. McClain's opponent may have been a motivating factor in the decision. DHS suggested to Mr. McClain that he use a part-time attorney in the Child Support Division in order to save costs, but McClain rejected that idea. He decided instead to terminate the plaintiff's position. When Mr. McClain informed plaintiff of the reasons for her dismissal, he was not entirely accurate. He blamed DHS for eliminating her position, yet Mr. McClain himself made that decision. Although the defendant cited a lack of funds as the reason for plaintiff's dismissal, it is undisputed that there were sufficient funds to retain the plaintiff when McClain took office. The then-existing budget contract with DHS did not expire until the end of the fiscal year in June of 1987, some six months after Mr. McClain took office. Despite this, Mr. McClain terminated the plaintiff immediately upon taking office. The plaintiff has also raised a question as to whether Mr. McClain's asserted cost-saving rationale was genuine. Mr. McClain decided to replace the plaintiff's position with a secretarial position and a contract process server. The plaintiff has pointed to evidence suggesting that the use of these two positions actually cost more than the investigator position. (McCroskey depo. at 95-97). Thus, a legitimate argument can be made that a reduction in funds was not the reason for the plaintiff's removal. Mr. McClain has never contended that the plaintiff was dismissed because her job performance was in some way inadequate. The absence of any legitimate motive for the plaintiff's termination makes it more likely that other motives, such as political patronage, were behind the decision to fire the plaintiff. Plaintiff points out that in July of 1987, Mr. McClain requested authorization to hire an additional investigator.
 
 
 31
 Other circumstantial evidence in the record supports an inference that the plaintiff's political support of Mr. McClain's opponent may have been a factor in her termination. For example, there is some question as to how and when Mr. McClain filled a vacant secretarial slot for which the plaintiff asked to be considered. Plaintiff contends that the job was vacant when she was terminated and that, instead of considering the plaintiff for the position, Mr. McClain promised the job to one of his political affiliates. There appears to be no dispute that the plaintiff was qualified to fill this position and had in fact performed many of the tasks required for the job in her tenure as an investigator. Although different conclusions may be drawn from the evidence, we cannot say that the plaintiff's argument that she was dismissed for political reasons is precluded by the record before us. The record shows that Mr. McClain fired numerous other workers from Young's office when McClain became district attorney, including the plaintiffs in this suit. Ms. Laidley contends that Mr. McClain fired a total of eleven people who had worked for Young and replaced them with his own political supporters. These factors contribute to an inference that political patronage played a role in the plaintiff's termination. Furthermore, all of the evidence in this case may be viewed in context as a product of the bitter campaign between Mr. Young and Mr. McClain.
 
 
 32
 Clearly, the evidence in the record may be interpreted in more than one way. When all of the inferences are drawn in plaintiff's favor, however, there is a genuine issue of material fact as to whether the plaintiff's protected First Amendment activity was a substantial or motivating factor in her dismissal.[6] We therefore reverse the district court's grant of summary judgment in favor of Mr. McClain individually on Count One of the complaint.[7]
 
 
 33
 III. Qualified Immunity.
 
 
 34
 The district court declined to rule on the question of qualified immunity. Because appellees have raised the issue on appeal and all of the pertinent facts are in the record before us, we proceed to address the issue.
 
 
 35
 Government officials performing discretionary functions are entitled to qualified immunity from suit insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The key to the inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken. Melton v. City of Oklahoma City, 879 F.2d 706, 727 (10th Cir.1989), reh'g granted in part, 888 F.2d 724. As we recently made clear, when a defendant raises a qualified immunity defense, the plaintiff bears a heavy burden and must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. Hannula v. City of Lakewood, 907 F.2d 129, 130-31 (10th Cir.1990).
 
 
 36
 We have little trouble in concluding that the rights at issue here were clearly established constitutional rights, and that a reasonable person would have known that refusing to retain or firing a low-level staff employee for exercising those rights was unlawful. The Supreme Court's decisions in Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) made clear that political patronage dismissals based on protected First Amendment activities were impermissible. Because a genuine issue of fact remains as to whether the defendant engaged in such conduct, the defendant is not entitled to summary judgment on the issue of qualified immunity.
 
 
 37
 IV. Pendant Jurisdiction.
 
 
 38
 The district court dismissed plaintiff's pendant state claims, finding that the plaintiff stated no substantial federal claim. Inasmuch as we have found that a substantial federal claim does exist, we reverse the dismissal of plaintiff's pendant state claims and remand for consideration of whether pendant jurisdiction should be exercised under United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) and, if jurisdiction is exercised, what effect our opinion has on plaintiff's state claims.
 
 
 39
 V. Conclusion.
 
 
 40
 The appeals of Bettye Redding, Cindy Thulin, and Renee Waisner are DISMISSED for lack of jurisdiction.
 
 
 41
 The district court's entry of summary judgment in favor of the defendant Ted Ritter in his official capacity and individually, the defendant Board of County Commissioners of Creek County, and the defendant Lantz McClain in his official capacity as district attorney are AFFIRMED.
 
 
 42
 The district court's entry of summary judgment in favor of the defendant Lantz McClain individually is REVERSED and remanded for further proceedings consistent with this opinion. The district court's dismissal of plaintiff Laidley's pendant state claims is also REVERSED and remanded for further consideration.
 
 
 43
 It is so ordered.
 
 
 
 *
 Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 The notice of appeal was captioned "Wilma Laidley, et al., Plaintiffs, vs. Lantz McClain; et al., Defendants." The body of the notice stated: "Notice is hereby given that plaintiffs in the above-styled case, [sic] hereby appeal ... from the Summary Judgment entered against them...." R1-74
 
 
 [2]
 Any allegation that the defendant Ritter should have intervened on plaintiff's behalf is not supportable. DATCC has no authority to intervene in employment decisions of the district attorney. See Okla.Stat.Ann. tit. 19, Sec. 215.36(C)
 
 
 [3]
 This finding applies to the action against Mr. Ritter both individually and in his official capacity. For the reasons discussed infra at p. 1392, any action against Mr. Ritter in his official capacity is barred by the Eleventh Amendment
 
 
 [4]
 Plaintiff filed a motion for leave to file an amended complaint in the district court. The amended complaint would have added Okfuskee County as a defendant. Because the district court ruled that the district attorney was a state officer, the court found that the motion to amend was moot. In view of our finding that the district attorney is a state officer, we find no error in the district court's denial of the motion
 
 
 [5]
 The Eleventh Amendment provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or presented against one of the United States by Citizens of another State, or by citizens or Subjects of any Foreign State." U.S. Const. Amend. XI
 The Amendment applies as well to a citizen suing the citizen's own state in federal court. Welch v. Department of Highways & Public Transportation, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987).
 
 
 [6]
 It is unclear whether the district court ruled that plaintiff Laidley was not entitled to First Amendment protection because of the confidential nature of her position. The findings adopted by the district court stated that an investigator position and a secretarial position are confidential in nature, but the court found specifically only that the plaintiffs other than Ms. Laidley were exempt from protection
 To the extent the defendant argues that Ms. Laidley's position was exempt from protection, we reject such a claim. The defendant has failed to demonstrate that party affiliation or political support was an appropriate requirement for the effective performance of her office. Dickeson v. Quarberg, 844 F.2d 1435, 1441 (10th Cir.1988) (citing Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).
 
 
 [7]
 Plaintiff does not appeal the district court's ruling on Count Two of the Complaint. (Appellant's Brief at 3)