Patricia KIDD, Appellant,

v.

DISTRICT OF COLUMBIA, et al., Appellees.

Nos. 98–7075, 98–7100.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 10, 2000.

Decided March 24, 2000.

Michael J. Haungs, appointed by the court, argued the cause as amicus curiae on the side of appellant. With him on the briefs was Daniel G. Jarcho.

Patricia Kidd, appearing pro se, was on the briefs for appellant.

James C. McKay, Jr., Assistant Corporation Counsel, argued the cause for appellees. With him on the brief were Robert R. Rigsby, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel. Lutz A. Prager, Assistant Deputy Corporation Counsel, and Sharlene E. Williams, Attorney, entered appearances.

Before: SILBERMAN, WILLIAMS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

Dissenting opinion filed by Circuit Judge TATEL.

STEPHEN F. WILLIAMS, Circuit Judge:

██ Rule 58 of the Federal Rules of Civil Procedure specifies that every "judgment shall be set forth on a separate document" and that "[a] judgment is effective only when so set forth." The Advisory Committee's Note to the 1963 Amendment adding the provision states that its purpose is to eliminate "uncertainties" that occur when a court has written "an opinion or memorandum containing some apparently directive or dispositive words." See also *United States v. Indrelunas,* 411 U.S. 216, 219, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973) (per curiam). The problem with such combination documents, said the Advisory Committee, was that they left doubt "whether the purported entry of judgment was effective, starting the time running ... for the purpose of appeal." Under our decisions a single document that disposes of all remaining claims can satisfy Rule 58 so long as it is sufficiently terse. We find that the order in question here satisfied Rule 58. As a result the notice of appeal was filed out of time, and the appeal must be dismissed.

\* \* \*

In October 1990 a jury in the District of Columbia Superior Court awarded Patricia Kidd $300,000 in compensatory and punitive damages on charges that her supervisors at the District of Columbia's Department of Administrative Services had engaged in discrimination and intentional infliction of emotional distress. Immediately after the trial, Kidd returned to work at the Department under the supervision of some of the defendants who had been found personally liable to her. (In fact the judgments were ultimately paid by the District.) Unsurprisingly, she found the work environment to be tense and hostile. And after the District denied her repeated requests for transfer and promotion, reassigned many of her job responsibilities to other employees, denied her requests for additional training, and gave her what she considered unfair performance evaluations, Kidd resigned from District employment on July 12, 1993.

Kidd complained to the EEOC. It found no evidence of retaliation but issued a right-to-sue letter in September 1992. She filed suit in December 1992. The district court made several attempts to appoint counsel for Kidd, but all failed. After instructing Kidd to proceed pro se, the court entertained the District's motion to dismiss. It construed Kidd's complaint as alleging retaliation and constructive discharge in violation of § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) (1994), discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d), and 42 U.S.C. § 1981, and denial of her constitutional rights to equal protection and due process made actionable under 42 U.S.C. §§ 1983 and 1985. After examining each claim, the court dismissed all counts with prejudice except for the claims of retaliation and constructive discharge, which it instructed Kidd to replead with greater specificity. Kidd included these claims in amended complaints filed in September and October 1994 and filed a complaint in a second suit in March 1995, alleging violation of § 704 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

The district court consolidated the two actions and referred the case both to mediation and to a magistrate judge. In February 1998, the magistrate issued a report and recommendation in favor of the District's summary judgment motion and against Kidd's motion for partial summary judgment. Kidd filed an objection to the magistrate's report, but the district court adopted the report and granted summary judgment in the District's favor on March 19, 1998. As a consequence, no claim of Kidd's survived.

Kidd appeals from the district court's grant of summary judgment and the dismissal of her other claims. But the threshold problem is the District of Columbia's challenge to our jurisdiction. The District argues that the district court's

order of March 19, 1998, stating that the District's "Motion for Summary Judgment ... is GRANTED," qualified as a judgment under Rule 58, so that Kidd's appeal, filed 41 days after its entry, was untimely under Rule 4(a) of the Federal Rules of Appellate Procedure. We agree and therefore dismiss Kidd's appeal.

\* \* \*

██ The time limits established by Rule 4(a) are "mandatory and jurisdictional." *Moore v. South Carolina Labor Bd.*, 100 F.3d 162, 163 (D.C.Cir.1996). Kidd offers two theories either of which, if correct, would moot the Rule 58 issue. She first argues that she has shown good cause for her failure to file within the ordinary appeal period. See Fed. R.App. P. 4(a)(5) ("The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)."). Kidd points to compelling evidence—indeed, evidence not disputed by the District—that she received no notice of the district court's order until April 14, 1998 at the earliest, and received no copy until April 28. But Rule 4(a)(5) requires appellants to file a motion requesting an extension of time with the district court. Kidd filed no such motion, and therefore Rule 4(a)(5) is inapplicable. Rule 4(a)(6) also provides an avenue of relief for a party receiving notice as belated as was Kidd's, but also requires a motion asking the district court to reopen the time for appeal. See Fed. R.App. P. 4(a)(6).

██ Kidd's second theory is that the district court's order failed to satisfy Rule 58's "separate document" requirement, so that the time for appeal never started running. Before looking at the order, we should explain what a document setting forth judgment must be "separate" from. The Advisory Committee Notes to the 1963 amendment say that the "amended rule ... require[s] that there be a judgment set out on a separate document—

*distinct from any opinion or memorandum*—which provides the basis for the entry of judgment." Fed.R.Civ.P. 58, Advisory Committee's Note to the 1963 amendment (emphasis added). They also say that Rule 58 was designed chiefly to distinguish an actual judgment from "an opinion or memorandum containing some apparently directive or dispositive words." *Id.* The Rules insist in other spots on simplicity and brevity in judgments. See Fed.R.Civ.P. 54(a) (" 'Judgment' as used in these rules includes a decree and any order from which an appeal lies. A judgment shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings."); *id.* app. Form 31 Advisory Committee's Note 3 ("The Rules contemplate a simple judgment promptly entered."). In light of all this, we've understood Rule 58 as requiring that "the inclusion of legal reasoning and authority" not go to the point of making "an order into a combined decision and order." *Diamond v. McKenzie*, 770 F.2d 225, 230 n. 10 (D.C.Cir.1985).

In its entirety the order here reads as follows:

### ORDER

Pending before the Court is Magistrate Judge Robinson's Report and Recommendation addressing Plaintiff's Partial Motion for Summary Judgment (Docket No. 174) and Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Docket No. 175). Plaintiff has filed an objection to this Report and Recommendation. (Docket No. 219). In her objection, Plaintiff still fails to raise any genuine issues of material fact in this recent filing and does not set forth any arguments that would cause the Court to reject Magistrate Judge Robinson's Report and Recommendation. Therefore, it is hereby

ORDERED that Magistrate Judge Robinson's Report and Recommendation

dated February 23, 1998 is AFFIRMED by the Court.

Consequently, it is

ORDERED that Defendant's Motion to Dismiss is DENIED, and that Defendant's alternative Motion for Summary Judgment (Docket No. 175) is GRANTED; and it is further

ORDERED that Plaintiff's Partial Motion for Summary Judgment (Docket No. 174) is DENIED.

March 19th 1998

Thomas F. Hogan /s/

United States District Judge

■ The Supreme Court has said that Rule 58 is to be "mechanically" applied, *Indrelunas,* 411 U.S. at 221–22, 93 S.Ct. 1562, and we have understood that as intended to advance the purpose of "avoid[ing] speculation" on the running of the time limits, *Diamond,* 770 F.2d at 230. But it is one thing to say that Rule 58 creates a straightjacket, another to define the straightjacket's precise measurements. Our decision in *Diamond* itself endorses decisions of other circuits allowing inclusion of at least one citation to legal authority and at least a one-sentence explanation of the court's reasoning. See *id.* at 230 n. 10. We said that "at some point, the inclusion of legal reasoning and authority makes an order into a combined decision and order," *id.,* confirming that some explanation is acceptable—so long as it is very sparse. Chief Judge Robinson went on to observe in his concurrence that to enforce mechanically did not require enforcing "mindlessly," citing *Weinberger v. United States,* 559 F.2d 401, 402 (5th Cir. 1977), and that "trivial departures [from the official judgment forms, see Fed. R.Civ.P. app. Forms 31, 32] must be tolerated in the name of common sense." *Diamond,* 770 F.2d at 234. He specifically mentioned several examples of trivial departures—not only the inclusion of a single sentence of explanation or citation to authority (both of which were acceptable to the panel), but also "a recital that a magistrate's report and recommendation are being adopted." *Id.* at 234. The latter seems on its face consistent with the "separate document" requirement, as the magistrate's report and recommendation are as separate from the judgment as a district court's opinion.

■ Chief Judge Robinson also said that "orders combining the court's directives with its statement of factual findings or legal conclusions plainly cannot pass muster as separate documents." *Id.* But in context this statement cannot be read to preclude a single sentence of explanation because the entire panel, with Judge Robinson in full agreement, had already found some minimal amount of legal reasoning to be consistent with Rule 58. See *id.* at 230 n. 10. Although our single-citation, single-sentence standard for Rule 58 may well seem arbitrary, see Dissent at 3–5, we think it most proper to follow *Diamond*'s analysis.

■ Under *Diamond,* the order here is a Rule 58 judgment. Apart from a reference to the motions being decided, and one conclusory sentence of justification, it consists simply of ordering clauses. It is even free of the single citation to authority that *Diamond* allows.

In the wake of *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), however, a number of circuits have concluded that orders adopting magistrate's reports cannot serve as judgments for purposes of Rule 58. See, e.g., *Kadelski v. Sullivan,* 30 F.3d 399, 400–02 (3d Cir.1994); *Yang v. Shalala,* 22 F.3d 213, 216 (9th Cir.1994). The Eleventh Circuit announced a similar rule but explicitly confined its reasoning to Social Security cases in general and more specifically to "the narrow facts of this case," *Newsome v. Shalala,* 8 F.3d 775, 775, 778–80 (11th Cir.1993). The Ninth Circuit noted the Eleventh Circuit's caution, but took "no position with regard to this limitation." *Yang,* 22 F.3d at 216 n. 5.

We are uncertain how these decisions can be extracted from *Schaefer.* The case

dealt with the seemingly endless snarl of district court dispositions under various sentences of 42 U.S.C. § 405(g), and claims for attorneys' fees under the Equal Access to Justice Act ("EAJA"). The Court, after having rejected various arguments of the Social Security claimant as to why his application for attorney's fees was not out of time, finally accepted his claim that the district court had not entered a judgment complying with Rule 58. The Court said that it was "clear from the record" that no " 'separate document' of judgment" had been entered, 509 U.S. at 303, 113 S.Ct. 2625, but also explicitly noted that the government had not claimed that the order in question qualified under Rule 58. See *id.* Indeed, confining the issue to a single footnote in its brief, the government had argued only that the claimant had waived his Rule 58 argument and that a Rule 58 judgment was not necessary for appealability to commence. See Brief for Petitioner, 1993 WL 290124, at *19 n. 12 (U.S. Jan. 14, 1993). The Court implicitly rejected the waiver idea. As for the appealability argument, it pointed out that under EAJA the issue was not when appealability began (which in practice happens before the time limit on appealability starts to run), see *Schaefer*, 509 U.S. at 303, 113 S.Ct. 2625, citing *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 385–87, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), but rather whether the appealability time limit had run. Thus the decision rested on the Court's assumption—entirely valid in view of the positions of the parties—that the order's compliance with Rule 58 was not before it. It cannot be read as having resolved the question of whether the adoption of a magistrate's report prevents an order from serving as a judgment. Moreover, as the claimant's contention that there was no Rule 58 judgment rested on its (mistaken) view that there was no judgment at all, see Respondent's Br., 1993 WL 476403, at *8, *23–*24 (U.S. Feb. 18, 1993), his brief sheds no light on the Court's possible thinking.

We note that in fact, under *Diamond*, the *Schaefer* order might well *not* have satisfied Rule 58. (The text is printed in *Newsome*, 8 F.3d at 779 n. 19.) The *Schaefer* order contains three sentences of "reasoning," couched in the form of a paraphrase of the magistrate's order. This is almost certainly excessive under *Diamond*.

We also note that Chief Judge Robinson's view—treating an order as Rule 58–qualifying where it recites that a magistrate's report is being adopted—rested on the Fifth Circuit's decision in *United States v. Perez*, 736 F.2d 236, 237 n. 3 (5th Cir.1984). It might be objected that in *Perez* the Fifth Circuit distinguished cases where the district court had granted summary judgment, and arguably confined the decision to the habeas corpus context. But the Fifth Circuit so limited its opinion only because its prior cases had established that a single document granting summary judgment could never satisfy Rule 58's requirements, see *Perez*, 736 F.2d at 237 n. 3; *Calmaquip Eng'g West Hemisphere Corp. v. West Coast Carriers, Ltd.*, 650 F.2d 633, 635–36 (5th Cir.1981); *Nunez v. Superior Oil Co.*, 535 F.2d 324, 324 (5th Cir.1976) (per curiam), a view hard to reconcile with our acceptance in *Diamond* of judgments containing an order of dismissal, see 770 F.2d at 229–30. Judge Robinson clearly did not qualify his view that a judgment could recite the adoption of a magistrate's report without becoming a memorandum and order, and neither did the Tenth Circuit in *Laidley v. McClain*, 914 F.2d 1386, 1390 (10th Cir. 1990), where it explicitly accepted under Rule 58 a document that granted summary judgment. (In *Laidley* a timely notice of appeal had been filed, and thus the question before the court was whether it had jurisdiction over a technically premature appeal—an issue that had already been resolved by the Supreme Court in *Bankers Trust*, 435 U.S. at 385–87, 98 S.Ct. 1117. But the court stated its interpretation without dependence on that proposition.)

Thus we see no reason to abandon Chief Judge Robinson's view of the natural infer-

ences from the panel's opinion in *Diamond*.

 Accordingly the district court's order qualifies as a judgment under Rule 58.[1] We emphasize, however, that when a district court enters its final order disposing of the remaining claims in a case before it, it should ideally enter a second, separate document specifically labeled "judgment" corresponding as closely as possible to Forms 31 and 32 attached to the Federal Rules of Civil Procedure.[2] Such a practice would save this court from having to make the kinds of distinctions that Rule 58 sought to eliminate. We have previously suggested that pro se litigants be given a simple form explaining the timing requirements for appeal when a final adverse judgment is entered. See *Moore*, 100 F.3d at 164. The same concerns suggest the wisdom of courts' using judgment forms that lie well within the heartland of Rule 58. But on the present record Kidd's appeal must be

*Dismissed.*

TATEL, Circuit Judge dissenting:

Although the issue in this case—what precisely constitutes a judgment within the meaning of Rule 58—seems technical, perhaps even formalistic, the stakes are actually quite high. For litigants, knowing with certainty whether a district court has entered a Rule 58 judgment is critically important. Not only does entry of a Rule 58 judgment start the clock for filing a notice of appeal, FED. R.APP. P. 4(a)(1), but a timely notice of appeal is jurisdictional; parties who fail to file a timely notice of appeal because they are unaware that Rule 58 judgments have been entered lose their right to appeal. *See, e.g., Moore v. South Carolina Labor Bd.*, 100 F.3d 162, 163 (D.C.Cir.1996).

"Prior to 1963, there was considerable uncertainty over what actions of the District Court would constitute an entry of judgment, and occasional grief to the litigants as a result of this uncertainty." *United States v. Indrelunas*, 411 U.S. 216, 220, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973) (per curiam). "To eliminate these uncertainties, which spawned protracted litigation over a technical procedural matter," *id.*, Rule 58 was amended in 1963 to read: "Every judgment shall be set forth on a separate document. A judgment is effec-

1. On finding jurisdiction, our dissenting colleague understandably goes on to examine the merits. But even with an assumption of jurisdiction, defendants' contentions as to Kidd's non-compliance with Local Rule 108(h) pose an obstacle to doing so. Both the district court and the magistrate judge informed Kidd of her obligation under Local Rule 108(h) to provide "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated," but the magistrate judge's report concluded that Kidd had not complied with the rule. The rule expressly provides that in the event of non-compliance material facts identified by the opposing side may be deemed admitted. See *Twist v. Meese*, 854 F.2d 1421, 1424–25 (D.C.Cir. 1988). The magistrate judge did not explicitly deem the District's statement of material facts admitted, but she did base her recommendation in part on a finding that Kidd failed to comply with Local Rule 108(h). Compare App. Amicus Curiae 940–41 (finding non-compliance by plaintiff with Local Rule 108(h)), with *id.* at 941–42 (finding defen-

dants entitled to judgment as a matter of law "on the basis of the foregoing findings"). In affirming the magistrate judge's report and recommendation, the district court said that Kidd had neither provided any genuine issue of material fact in her objection to the report nor put forth an argument that would cause the Court to reject the report; it did not explicitly discuss the magistrate's ruling as to Local Rule 108(h).

2. The Dissent notes that the judgment here was labeled "Order" rather than "Judgment." Dissent at 37. While we agree that the better practice is to label judgments as such, we have previously said that "a document labeled 'Order' rather than 'Judgment' may satisfy Rule 58 sufficiently to start the appeal clock running, if the order is succinctly to the point, and does not have the characteristics of an elaborate opinion. See *United States v. Perez*, 736 F.2d 236, 237–38 (5th Cir.1984) (cautioning against "mindless" application of Rule 58)." *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 32 n. 4 (D.C.Cir.1990) (Ruth Bader Ginsburg, J.).

tive only when so set forth...." FED. R.CIV.P. 58. Known as the "separate document rule," amended Rule 58 makes "clear that a party need not file a notice of appeal until a separate judgment has been filed and entered." *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 385, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam). As the Supreme Court has recognized, the rule change "would be subject to criticism for its formalism were it not for the fact that something like this was needed to make certain when a judgment becomes effective, which has a most important bearing ... on the time for appeal." *Indrelunas,* 411 U.S. at 220, 93 S.Ct. 1562 (internal quotation marks omitted). Accordingly, the Court has held, the Rule must be "mechanically applied in order to avoid new uncertainties." *Id.* at 222, 93 S.Ct. 1562.

The Supreme Court has recognized only one exception to the rule's "mechanical" application. In *Bankers Trust,* the Court confronted the issue whether the absence of a conforming Rule 58 judgment rendered a notice of appeal premature, depriving the appeals court of jurisdiction even though the district court had clearly intended to enter final judgment. Because "[t]he rule should be interpreted to *prevent* loss of the right of appeal, not to *facilitate* loss," the Court held that "[t]he need for certainty as to the timeliness of an appeal ... should not prevent the parties from waiving the separate judgment requirement where one has accidentally not been entered." *Bankers Trust,* 435 U.S. at 386, 98 S.Ct. 1117 (emphasis added) (internal quotation marks omitted).

Heeding the Supreme Court's directive to apply Rule 58 strictly to protect appeal rights, we have held that "a combined decision and order" cannot serve as a "judgment" within the meaning of Rule 58. *See Diamond v. McKenzie,* 770 F.2d 225, 230 n. 10 (D.C.Cir.1985) (distinguishing between "decisions" of the district court and Rule 58 final judgments). In *Pack v. Burns International Security Service,* 130

F.3d 1071, 1071–72 (D.C.Cir.1997) (per curiam), we found that a document "stating that the motion to dismiss would be treated as conceded and granted" and giving several reasons for dismissal failed to comply with Rule 58. We reached the same conclusion in *Diamond,* 770 F.2d at 229–30, with respect to a document captioned "order" that gave the "basis, albeit briefly, of the court's reasoning, along with citations to legal authorities." The caption and the presence of the court's reasoning (including its citation to authority), we noted, meant that the order differed in "at least two significant respects" from Model Forms 31 and 32, which were passed contemporaneously with the amendment to Rule 58. *Id.* at 229 n. 9.

> It is precisely this kind of uncertainty about whether the District Court intended to enter a final order that warrants the mechanical application of Rule 58. By mechanically applying this rule, as the Supreme Court has taught us to do, a court may avoid speculation as to whether an appellant should or should not have known that the time for appeal had begun to run.

*Id.* at 230 (footnote omitted). We concluded: "While we do not mean to suggest that the model form of judgment is the only means of complying with Rule 58, adherence to [that] format ... would be of considerable assistance in eliminating uncertainty as to the nature of the District Court's action." *Id.* at 229 n. 9.

Applying *Diamond* and *Pack* and taking account of Rule 58's purpose, I believe that the district court's order in this case represents a combined decision and order, not a Rule 58 judgment. As in *Diamond,* the order differs from Form 32 in two respects. *See id.* First, it is not labeled "Judgment." Instead, as were fifty-nine other documents issued by the district court and the magistrate judge in this case, some of which did no more than grant extensions of time, it was labeled "Order." Were this the order's only flaw, I would agree with the court that this

insignificant departure from the model forms would not prevent us from finding that the order complies with Rule 58. *See* Maj. Op. at 41 n.2. But the order departs from the Model Forms in a second, "most critical[ ]" (*Diamond*'s words) respect: it contains the district court's reasoning. Because Kidd had objected to the magistrate's recommendation and because Fed. R.Civ.P. 72 requires the district court to "make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made," the district court explained its reasoning: "In her objection, Plaintiff still fails to raise any genuine issues of material fact in this recent filing and does not set forth any arguments that would cause the Court to reject Magistrate Judge Robinson's Report and Recommendation."

The only difference I can discern between this order and the order in *Diamond,* which we concluded was a combined decision and order, is that the *Diamond* order contained three sentences of reasoning, not one, together with several citations. In view of Rule 58's purpose—providing certainty—and our obligation to interpret Rule 58 "to *prevent* loss of the right of appeal, not to *facilitate* loss," *Bankers Trust,* 435 U.S. at 386, 98 S.Ct. 1117 (emphasis added), these two differences cannot serve as a basis for distinguishing this case from *Diamond.* From a Rule 58 standpoint, the critical point is that the orders in both cases contained the district court's reasoning. It makes no difference that the district court in this case sets forth its reasoning in one sentence whereas the district court in *Diamond* used three. Suppose that instead of stating its reasoning in a single sentence, the district court here had broken its one sentence into two: "In her objection, Plaintiff still fails to raise any genuine issues of material fact[. I]n this recent filing[, she] does not set forth any arguments that would cause the Court to reject Magistrate Judge Robinson's Report and Recommendation." Would this departure

from the "one sentence" rule my colleagues seem to adopt have persuaded them that the order was a combined decision and order?

This court also says that the order is a Rule 58 judgment because it lacks even the single citation it reads *Diamond* to permit. Although this "single citation" standard presumably means that the order would have passed as a Rule 58 judgment even if the district court had cited, for example, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the oft-used authority for Rule 56's summary judgment standard, suppose the district court had also included a citation to one of our cases for the same proposition or even to Rule 56 itself? Would my colleagues then have concluded this was not a Rule 58 judgment? Rule 58's amendment was intended to end just this type of uncertainty.

The court quotes Chief Judge Robinson's admonition that "trivial departures must be tolerated in the name of common sense." *See* Maj. Op. at 39 (quoting *Diamond,* 770 F.2d at 234 (Robinson, C.J., concurring)). I agree. They also point to his statement that an order "does not lose its character as a separate document simply because it includes a one-sentence explanation of what the order is all about, or a recital that a magistrate's report and recommendation are being adopted." *Diamond,* 770 F.2d at 234 (Robinson, C.J., concurring) (footnote omitted). I agree with this too. But the Kidd order goes beyond both "a one-sentence explanation of what the order is all about" and a "recital" that Magistrate Judge Robinson's report and recommendation are being adopted. *Id.* It sets forth the district court's *reasons* for adopting the report. Indeed, Chief Judge Robinson distinguished between the simple recitals he referred to as "trivial departures," *i.e.,* "explanation[s] of what the order is all about," and the court's reasoning: "On the other hand, orders combining the court's

directives with its statement of factual findings or legal conclusions plainly cannot pass muster as separate documents." *Id.*

Suggesting that Chief Judge Robinson could not possibly have meant what he said, my colleagues conclude that the sentence "cannot be read to preclude a single sentence of explanation because the entire panel, with Judge Robinson in full agreement, had already found some minimal amount of legal reasoning to be consistent with Rule 58." Maj. Op. at 39. But listen again to Chief Judge Robinson's words. "[S]tatement[s] of factual findings or legal conclusions," he said, "plainly cannot pass muster as separate documents." *Diamond*, 770 F.2d at 234 (Robinson, C. J., concurring). And far from tolerating "minimal" reasoning, the *Diamond* court concluded that the order was not a Rule 58 judgment because it "provid[ed] the basis, albeit briefly, of the court's reasoning, along with citations to legal authorities." *Diamond*, 770 F.2d at 229–30.

The standard my colleagues now adopt—an order is a Rule 58 judgment so long as it contains only "sparse" reasoning, Maj. Op. at 39—will require this court, contrary to the Supreme Court's warning against "case-by-case tailoring of the 'separate document' provision," *Indrelunas*, 411 U.S. at 221, 93 S.Ct. 1562, to develop a common law of "sparseness." This will in turn produce the very uncertainty and "protracted litigation over a technical procedural matter" that Rule 58's amendment was designed to end. *Id.* at 220, 93 S.Ct. 1562.

In my view, litigants, district courts, and this court would be better served by a bright line rule: Orders containing the district court's reasoning, three sentences or one, several citations or none, are not judgments within the meaning of Rule 58. To comply with such a rule, the district court need only instruct its clerk to issue judgments that adhere to the essence of Model Forms 31 and 32. Such a procedure would provide the certainty Rule 58 demands, prevent accidental loss of appeal

rights, and ensure that this court will never again have to address this issue.

\* \* \*

Because I would hold that Kidd's appeal is timely, I would reach the merits of her case and reverse. Even a cursory review of Kidd's *pro se* filings should have demonstrated to the magistrate judge who disposed of Kidd's case in three conclusory sentences that Kidd's primary allegation— that she was denied a promotion by the very District of Columbia officials against whom she had just won a substantial verdict for intentional infliction of emotional distress stemming from sexual harassment and forced sodomy by her supervisor— presented a strong prima facie case of retaliatory failure to promote as well as sufficient evidence of pretext to survive summary judgment.

In response, my colleagues offer still another reason why this court cannot reach the merits of Kidd's case. They point out that the magistrate judge found that Kidd had failed to comply with Local Rule 108(h); citing *Twist v. Meese*, 854 F.2d 1421, 1424 (D.C.Cir.1988), they also point out that "[t]he rule expressly provides that in the event of noncompliance material facts identified by the opposing side *may* be deemed admitted." Maj. Op. at 41 n.1 (emphasis added). But unlike in *Twist*, where the district court "relied on Rule 108(h) to hold that the material facts identified by the government were deemed admitted," 854 F.2d at 1424, the magistrate judge here chose not to deem the District's facts admitted, much less to rest her summary judgment recommendation on Kidd's failure to comply with Local Rule 108(h). Instead, the magistrate judge considered Kidd's evidence: "[T]he undersigned finds that plaintiff has failed to identify even a single material fact as to which a genuine issue for trial exists. Rather, both her motion and her opposition to defendants' motion are almost entirely comprised of her opinions of defendants' actions and characterizations of various statutes and decisions." The dis-

trict court likewise did not rely on Local Rule 108(h): "In her objection, Plaintiff still fails to raise any genuine issues of material fact in this recent filing and does not set forth any arguments that would cause the Court to reject Magistrate Judge Robinson's Report and Recommendation." Because neither the magistrate judge nor the district court relied on Kidd's failure to comply with the rule, nothing bars this court from reaching the merits of her case.

The D.C. Court of Appeals described the facts leading up to Kidd's sexual harassment lawsuit as follows. Shortly after Kidd began working for the Department of Administrative Services, her immediate supervisor, one Melvin Carter, "began calling her at home and once asked her when she would make love to him." *King v. Kidd,* 640 A.2d 656, 659 (D.C.1993). "Carter showed Kidd documents demonstrating that she was a probationary employee" and told her that "because of her probationary status, she could be fired at his recommendation and that no one would question anything." *Id.* He then called her and "ordered her to come to a nearby hotel." *Id.* Kidd hung up, but he called back, reminding her of her probationary status. She went to the hotel where they had sex. *Id.* Carter continued to "pursu[e] her," becoming "angry and loud" when she refused to have sex with him again. Carter also "took away her computer and her clerical assistant." *Id.* at 660. Kidd gave in and again had sex with Carter. "According to Kidd's testimony, Carter ... forcibly sodomized her, rupturing her anal tissues and causing her to fear AIDS." *Id.*

Kidd complained to Carter's direct supervisor, Robert King, about "stress, harassment and mistreatment." *Id.* Receiving no relief, Kidd filed suit in Superior Court against Carter, King, Raymond Lambert (the director of the Department of Administrative Services), and the District alleging sexual harassment and intentional infliction of emotional distress. A jury found Carter, King, and Lambert personally liable for intentional infliction of emotional distress and Carter liable for sexual harassment as well. The jury awarded Kidd $300,000 in compensatory and punitive damages.

Kidd then returned to work. Believing the environment of the Department to be hostile—King and Lambert, both of whom had been found personally liable to her, were still there—Kidd applied for a transfer. Her request was denied. Kidd also applied for a promotion to a level DS–12. This request also was denied, and record evidence suggests that Lambert, one of the defendants in the Superior Court lawsuit who at the time was personally liable to Kidd for $260,000, took part in the decision to deny the promotion.

To establish a prima facie case of retaliation, Kidd must show that she engaged in activity protected by Title VII, that the District took an adverse employment action against her, and that the adverse action was causally related to the exercise of her rights. *See Cones v. Shalala,* 199 F.3d 512, 521 (D.C.Cir.2000). Kidd satisfies all three elements of this standard: Her prior sexual harassment lawsuit is protected activity under Title VII; the District failed to promote her; and her evidence of causal connection—that the person denying her the promotion was personally liable to her for $260,000 at the time he denied the promotion—is overwhelming. Indeed, because Kidd's prima facie case "strongly suggests intentional discrimination[, it] may be enough by itself to survive summary judgment." *Aka v. Washington Hosp. Center,* 156 F.3d 1284, 1289 n. 4 (D.C.Cir.1998) (en banc). *See also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("[T]here may be some cases where the plaintiff's initial [prima facie] evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.").

Even if Kidd's prima facie case standing alone were insufficient, her evidence that the District's asserted nondiscriminatory reasons were pretextual, when considered in combination with the strength of her prima facie case, was enough to preclude summary judgment. *See Aka,* 156 F.3d at 1289 ("Assuming then that the employer has met its burden of producing a nondiscriminatory reason for its actions, the focus of proceedings at trial (and summary judgment) will be whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to plaintiff . . ."). Responding to the District's contention that she was not promoted from DS–11 to DS–12 because the Mayor had frozen hiring and promotions, Kidd submitted a sworn statement that her supervisor "requested a waiver of the Mayor's Order to promote another employee." She also stated that "[t]he freeze apparently was arbitrary because Gary Hicka was brought on board as a DS–12 realty specialist . . . to fill one of the vacant positions." From this evidence that the Department made exceptions to the freeze for other employees, a jury could have concluded that the District's explanation was pretext for retaliation. *See Cones,* 199 F.3d at 519.

The District also claimed that Kidd was unqualified for a promotion to the DS–12 level, but Kidd provided evidence that in her DS–11 position, she performed work normally assigned to DS–12 employees. In fact, the District does not dispute that after a restructuring of the Department, many of the tasks she had been performing were taken from her and reassigned to employees at the DS–12, 13, 14, and 15 levels.

I have no idea whether a jury would have returned a verdict in Kidd's favor. But viewing the record in the light most favorable to Kidd and drawing all inferences in her favor, as we must at this stage of the case, I have no doubt the case should have gone to a jury.

In reaching this conclusion, I recognize the indications in the record that Kidd may have been a difficult plaintiff—the district court tried repeatedly to appoint counsel, and in each instance, counsel withdrew. I also recognize, as the magistrate judge found, that Kidd's *pro se* opposition to defendants' motion for summary judgment was neither succinct nor particularly successful at separating her legal arguments from her factual assertions. In contrast, we have had the benefit of *amicus's* masterful appellate brief. But even without that brief, had the magistrate judge carefully reviewed Kidd's pleadings, as she is required to do in *pro se* cases, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam) (holding *pro se* pleadings to less stringent standards than formal pleadings drafted by lawyers), she too would have seen that Kidd had a strong prima facie case of retaliation and sufficient evidence of pretext to preclude summary judgment.

I respectfully dissent.